413 A.2d 1012

**In re ESTATE of Thomas PITONE, a/k/a Thomas J. Pitone, Deceased (two cases).**

**Appeal of Rose GRECO.**

**Appeal of Helen TADDEO and Elizabeth DiPhillips.**

Supreme Court of Pennsylvania.

Argued Dec. 10, 1979.

Decided March 20, 1980.

Reargument Denied May 28, 1980.

62

Peter A. Deliberty, Upper Darby, for appellant in No. 129 and appellee in No. 248.

Robert B. Ely, III, Media, Donald J. Farage, Philadelphia, for appellee in No. 129 and appellants in No. 248.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, LARSEN and FLAHERTY, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

These cases involve two (2) appeals which were argued together and may be disposed of in one opinion. Appeal # 129 was filed by Rose Greco, the Executrix of the Estate of Thomas Pitone, a/k/a Thomas J. Pitone, Deceased, from a Decree of the Orphans' Court determining ownership of a joint bank account to be in decedent's estate.[1] The second appeal # 248 was filed by Helen Taddeo and Elizabeth DiPhillips from a Decree of the Orphans' Court dismissing their exceptions to the first account filed by the executrix. These exceptions concern liability of the estate for certain costs and counsel fees, credit for medical expenses paid by insurance, surcharge of executrix for failure to invest estate funds, and removal of the executrix.

On April 15, 1974 decedent opened Philadelphia Savings Fund Society (PSFS) Account No. K433124. On October 15,

---

1. A direct appeal was filed in this Court pursuant to Section 202(3) of the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, Art. II, 17 P.S. § 211.202(3) (Supp.1978), since superseded by Section 722(3) of the Judicial Code, 42 Pa.C.S. § 722(3) (effective June 28, 1978).

1974 decedent executed his Last Will and Testament providing for equal division among his three sisters of (1) any cash in the bank at the time of his death, (2) the proceeds of his two Ten Thousand Dollar U.S. Government Savings Bonds and (3) the net proceeds from the sale of his lots in Aruba. On November 15, 1974 decedent was admitted to the hospital for exploratory surgery. The next day decedent and Rose Greco (one of his three sisters and the one with whom he lived) purportedly closed PSFS Account No. K433124 in decedent's name alone and transferred the funds to PSFS Account No. K434339, a joint account with the name "Thomas Pitone, Rose Greco either to draw". Decedent was discharged from the hospital November 28, 1974. On January 10, 1975, decedent was again admitted for the same condition, and on February 15, 1975, he died. In the interim, on January 13, 1975, Rose Greco had withdrawn $30,000 from the account.

Rose Greco now claims sole ownership of the funds in Account No. K434339 as survivor of the joint account.

## 1. JOINT BANK ACCOUNT

■ The Courts have always scrutinized with a keen and somewhat incredulous eye transactions by which a decedent strips himself of all available property shortly before his death. *Wise's Estate*, 182 Pa. 168, 171, 37 A. 936 (1897). At the time the account in question was opened, it constituted a major portion of decedent's assets. Looking to the totality of the circumstances, the Court below found that if the joint account was, in fact, created by the decedent, it was meant only as a convenience. Only one month prior to the creation of the joint account, decedent had executed a will indicating a settled intention to deal with all his sisters equally. This intention was expressed three times in that instrument. On the other hand, there is nothing in the record which would satisfactorily explain such a significant change in decedent's intentions during that one month period so as to substantially negate the distribution expressed in his will.

Moreover, the circumstances of the making of the gift to the donee are clouded in uncertainty. Although decedent expressed to a bank employee his intention to add to the book the name of the sister with whom he lived, no witness could identify decedent's signature on a bank signature card. More significant, in our view, is the fact that the purported signature card between the parties was not put into evidence in the court below, nor is it part of the record on appeal. We agree with the lower court that the joint account was a convenience account and was not meant to be a gift inter vivos to decedent's sister.

■ Appellant-Executrix argues that the trial court erred in not holding contestants to their proper burden of proof; i. e., to establish by clear, precise and convincing evidence that decedent did not intend a gift inter vivos. We disagree. It is the burden of the claimant to establish a gift inter vivos by clear, precise, direct and convincing evidence. *Hosfeld Estate*, 414 Pa. 602, 202 A.2d 69 (1964). It is true that when a signature card so stating is executed by both parties, these facts are prima facie evidence of a gift inter vivos by the depositor to the other. *Furjanick Estate*, 375 Pa. 484, 100 A.2d 85 (1953).[2] Here, however, proponent failed to prove in the first instance that the decedent had signed a signature card. Moreover, proponent failed to make out a prima facie case of a gift in any fashion. Therefore, no burden shifted to the contestants. We, therefore, affirm the decision of the lower court ordering that the $30,000, plus interest thereon, be returned to the estate.

## 2. COSTS AND COUNSEL FEES

■ The lower court decreed that costs incurred by executrix-appellee for depositions, court reporter services, witness fees and costs of appeal, including attorney's fees, incurred in determining ownership of the joint bank account, should

---

2. We note that Chapter 63 of the Probate, Estates and Fiduciaries Code, [hereinafter "P.E.F. Code"] 20 Pa.C.S.A. §§ 6301–6306 (Supp. 1978) (added by the Act of July 9, 1976, P.L. 547, No. 134, effective September 1, 1976) alters the law of this Commonwealth applicable to joint interests in bank accounts. However, that statute is inapplicable in the present case.

be charged against the estate. Had she prevailed, the executrix would have received in excess of $30,000, nearly half of the estate assets, for her own benefit. The services mentioned thus were rendered for her personal benefit. This conflicted with the general interests of the estate.

Executrix-appellee was under a duty to see that her purely private interests were not advanced at the expense of the estate. *Herman's Estate*, 90 Pa.Super. 512 (1927). Since the services in question were not beneficial to the estate, but were rendered on behalf of executrix-appellee for her individual benefit, the costs were not properly chargeable to the estate. We reverse the award of the lower court to the extent that it charged these costs and expenses to the estate. *Wood's Estate*, 272 Pa. 8, 115 A. 865 (1922).

### 3. CREDIT FOR DEBTS PAID BY INSURANCE

■ Appellants Helen Taddeo and Elizabeth DiPhillips take exception to the payment of medical, ambulance, nursing and hospital bills out of the estate, alleging that these expenses were paid by decedent's insurance carrier during the course of administration. Counsel for the estate advised appellants' attorney in writing that "no part of decedent's expenses were unpaid by the insurance coverage." However, at the hearing below, he testified that none of these expenses of decedent's last illness were covered by insurance. Faced with this conflicting evidence, the lower court found that the basis for the objection was "resolved", and the expenses were properly charged to the estate. We will not disturb a finding of fact by the auditing judge where the finding is supported by competent and adequate evidence and is not predicated upon a capricious disregard of competent and credible evidence. *Estate of Penrose*, 486 Pa. 9, 403 A.2d 982 (1979). We therefore affirm the lower court's resolution of this issue.

### 4. SURCHARGE FOR FAILURE TO INVEST ESTATE FUNDS

■ An executrix is required to exercise the same degree of judgment that a reasonable person would exercise in the

management of his own estate. *In re Estate of McCrea*, 475 Pa. 383, 380 A.2d 773 (1977). Appellants Taddeo and DiPhillips request a surcharge for failure of executrix-appellee to deposit the estate assets in an interest bearing savings account. Counsel for executrix-appellee explained the estate was quickly diminished by administration and litigation expenses, leaving a balance of about $6,000 in the estate account. These funds were held in a non-interest-bearing checking account because of a need for ready cash and liquidity of funds.

■ We think that the amount of time involved in the administration of this estate is significant. Letters testamentary were granted on March 4, 1975, but executrix-appellee delayed filing her first account until June 2, 1978, and then after issuance of a court order to do so. During these three years, the account in question could have been invested in an interest bearing savings account where the funds would have been available on demand and without a delay. Instead the funds were allowed to remain idle and unproductive. P.E.F. Code, Act of June 30, 1972, P.L. 508, No. 164, 20 Pa.C.S. § 3316 (1975) provides: "Subject to his duty to liquidate the estate for prompt distribution and to the provisions of the will, if any, the personal representative may invest the funds of the estate but shall have no duty to do so." Before the enactment of this statute case law had approved investment of funds by personal representatives and indicated a duty to do so in certain circumstances. *Bile's Appeal*, 24 Pa. 335 (1855); *Jones Estate*, 400 Pa. 545, 162 A.2d 408 (1960); *Lare Estate*, 436 Pa. 1, 257 A.2d 556 (1969). Clearly, the legislature did not intend by this legislation that under no circumstances would a personal representative ever have a duty to invest estate funds. Rather, we construe this statute to mean that where administration of an estate is concluded reasonably within the time contemplated by law, the personal representative has no duty to invest estate funds. But where, as in the instant case, administration of an estate is delayed for an extended period of time, it is incumbent upon the personal representative to

invest the funds and not to permit them to remain idle. Where a personal representative breaches this duty, she may properly be surcharged for appropriate interest. We will remand this part of the proceedings to the Orphans' Court to determine the amount of surcharge in accordance with the views herein set forth.

### 5. REMOVAL OF EXECUTRIX

 Appellants Taddeo and DiPhillips assert the Orphans' Court erred in failing to remove executrix-appellee. The Orphans' Court has "exclusive power to remove a personal representative when he," inter alia, "is wasting or mismanaging the estate . . . , or has failed to perform any duty imposed by law" or "when, for any other reason, the interests of the estate are likely to be jeopardized by his continuance in office." P.E.F. Code, Act of June 30, 1972, P.L. 508, No. 164 § 2, eff. July 1, 1972, 20 Pa.C.S.A. § 3182. Removal of the personal representative is largely within the discretion of the Orphans' Court. Thus our present inquiry is whether the court below abused its discretion. *Beichner Estate*, 432 Pa. 150, 247 A.2d 779 (1968).

The removal of a fiduciary is a drastic action which should be taken only when the estate is endangered and intervention is necessary to protect the property of the estate. *Scientific Living, Inc. v. Hohensee*, 440 Pa. 280, 295, 270 A.2d 216, 224 (1970). Particularly drastic is the removal of the executrix chosen by the testator, since her appointment represents an expression of trust and confidence in her. *In re Estate of Lux*, 480 Pa. 256, 389 A.2d 1053 (1978). In the instant case, the executrix claimed ownership of a joint bank account which amounted to nearly half the assets in the estate. While similar facts have been held to justify removal of an executor, *Henry's Estate*, 54 Pa.Super. 274 (1913), we do not think that fact alone should necessitate removal of executrix-appellee here. When the lower court found the proceeds of the account to be estate assets and ordered the assets with the interest repaid to the estate, the executrix complied immediately. We have today held that the costs and attorney's fees incurred by executrix in attempting to

establish ownership of the account were not properly charged to the estate. So that, while the litigation regarding ownership of the bank account may have contributed to delay in settling this estate, the actual costs of the litigation do not burden the estate, and executrix-appellee has evidenced a willingness to comply with all orders of the lower court. Compare *In re Estate of Lux, supra,* 480 Pa. at 271, 389 A.2d at 1060. Furthermore, the conclusion of the administration of this estate is now very near at hand. To require a new executor to qualify and administer the estate might cause additional delay and expense. For these reasons, we hold that the lower court did not abuse its discretion in refusing to remove executrix-appellee.

The Decree of the trial court of March 3, 1978 at Appeal No. 129 January Term, 1978 is affirmed and a Decree entered in favor of appellees Helen Taddeo and Elizabeth DiPhillips. The Decree of the trial court of May 24, 1979 at Appeal No. 248 January Term, 1979, is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion. Each party to pay own costs.

NIX, J., did not participate in the consideration or decision of this case.

ROBERTS, J., concurred in the result.