## Miller Estate

■■■

■■■

*Gerald M. Barr,* for petitioners.
*Gary F. Dobias,* for respondents.

LAVELLE, *P.J.,* December 31, 1980—This case involves an ownership contest to three bank accounts.

Estella M. Miller died testate on March 20, 1977. Her will was duly probated and letters testamentary were issued to William M. Kuntzman. Mr. Kuntzman claimed ownership of the following assets claiming them as gifts from decedent during her lifetime:

1. Checking Account no. 20-656-3 opened on December 6, 1976 at the First National Bank of Palmerton in the name of Estella M. Miller or William M. Kuntzman containing a balance of $8,435.76 (hereinafter Account no. 1).

2. Certificate of Deposit no. 6347 issued on December 31, 1976 in the names of Estella M. Miller or William M. Kuntzman by the First National Bank of Palmerton in the principal amount of $5,000 (hereinafter Account no. 2).

3. Certificate of Deposit no. A-1721 issued on December 31, 1976 by Citizens Bank and Trust Company of Palmerton in the names of Estella M. Miller or William M. Kuntzman in the principal amount of $5,000 (hereinafter Account no. 3).

Following the death of Mr. Kuntzman in December of 1977, the new administrators d.b.n.c.t.a. of the estate of Estella M. Miller filed a petition for the recovery of the aforesaid assets against the estate of William M. Kuntzman. Steven J. Hartz, Esq., the master appointed by this court, conducted evidentiary hearings and filed a report concluding

that petitioners were entitled to recover the funds represented by Account no. 2. The master further found that Estella M. Miller made valid gifts of the funds represented by Accounts no. 1 and no. 3 to William M. Kuntzman and these funds could not be recovered by petitioners.

On February 28, 1980 we entered a decree nisi approving the master's report. The findings of fact and conclusions of law set forth in his report were adopted as the findings of fact and conclusions of law of the court. Exceptions by both parties were filed to our decree nisi and are now before this court for disposition.

The issues raised by the exceptions of both parties may be summarized as follows:

I. Whether Estella M. Miller created a right of survivorship in William M. Kuntzman in all three accounts.

II. Whether Estella M. Miller was mentally competent at the time she established the three accounts.

III. Whether there existed a confidential relationship between Estella M. Miller and William M. Kuntzman at the time the three accounts were opened.

After a thorough review of the law and the record, we find no merit to any of the exceptions and affirm our decree nisi.

## DISCUSSION

I. Right of Survivorship

Pennsylvania law governing the creation of joint accounts with right of survivorship has long held that properly executed signature cards bearing words of survivorship weigh heavily in the ultimate disposition of the joint account after the death of one of the parties.

"[T]he creation of a joint interest in a bank account with rights of survivorship, evidenced by the signatures of both parties, is prima facie evidence of the intent of the party funding the account to make an inter vivos gift to the other joint tenant. . . . [S]uch a presumption may be overcome where there is clear, precise and convincing evidence to the contrary." Estate of Gladowski, 483 Pa. 258, 262, 396 A. 2d 631, 633 (1979).

Indeed, a properly executed signature card is presumed to create a joint account with right of survivorship as opposed to a joint account for convenience purposes with no right of survivorship. See Estate of Bowser, 485 Pa. 209, 401 A. 2d 733 (1979); Estate of Lux, 480 Pa. 256, 389 A. 2d 1053 (1978). If a signature card is not signed by the party funding the joint account and signed solely by the alleged donee, and if no other strong evidence of gift is presented, then there is no right of survivorship: Estate of Pitone, 489 Pa. 60, 413 A. 2d 1012 (1980); Sivak Estate, 409 Pa. 261, 185 A. 2d 778 (1962); Religa Estate, 409 Pa. 267, 186 A. 2d 42 (1962).

In the instant case it is undisputed that Estella M. Miller solely funded all three accounts. Further, Account no. 1 and Account no. 3 were accompanied by signature cards indicating a right of survivorship and were signed by Estella M. Miller and William M. Kuntzman. Therefore, the estate of William M. Kuntzman established a prima facie gift of these two accounts by Estella M. Miller to William M. Kuntzman. The estate of Estella M. Miller then had the burden to show by clear and convincing evidence that an inter vivos gift was not intended. No such evidence was presented. Therefore, the finding of the master that the moneys represented

by the said two accounts belonged to the estate of William M. Kuntzman is correct.

Further, it is also undisputed that the signature card supporting Account no. 2 was signed only by William M. Kuntzman. Because there was no prima facie evidence of gift here, Mr. Kuntzman's estate had the burden of proving the gift by "clear, precise and convincing evidence." Hosfeld Estate, 414 Pa. 602, 202 A. 2d 69 (1964). The two essential elements of an inter vivos gift are donative intent and delivery: Rankin v. Kabian, 414 Pa. 554, 201 A. 2d 424 (1964). The estate of William M. Kuntzman presented no evidence of donative intent on the part of Estella M. Miller. We hold, therefore, that the estate of William M. Kuntzman did not establish an inter vivos gift and does not enjoy a right of survivorship in the certificate of deposit.

Pennsylvania law on joint accounts has been modified somewhat by Chapter 63 of the Probate, Estates and Fiduciaries Code (Chapter 63), 20 Pa.C.S.A. §§6301-6306: Estate of Pitone, supra; Young Estate, 480 Pa. 580, 391 A. 2d 1037 (1978). Chapter 63 applies to all joint accounts created after September 1, 1976 and is therefore applicable to the accounts in the instant case. Chapter 63, however, does not change our conclusions.

Section 6301 of Chapter 63, 20 Pa.C.S.A. §6301, defines "joint account" as follows: "'Joint Account' means an account payable on request to one or more of two or more parties whether or not mention is made of any right of survivorship." Section 6304 of Chapter 63, 20 Pa.C.S.A. §6304, provides:

"Right of Survivorship      (a) Joint Account.— Any sum remaining on deposit at the death of a

party to a joint account belongs to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intent at the time the account is created. . . ."

In our view, the only significant change wrought by chapter 63 in existing Pennsylvania law concerning the effect of signature cards is that joint accounts and accompanying signature cards are not required to carry words of survivorship in order to create a right of survivorship. In other words, where there is a duly established joint account,[1] even though no survivorship language appears in the signature card or certificate, the law now presumes a right of survivorship.

Where a joint account is not duly established, there is no presumption of right of survivorship. The old principle of law remains: "[T]he mere fact that money is deposited in the account of the owner *and* another or the owner *or* another does not *standing alone*, prove a gift inter vivos. . . ." (Emphasis in original.) Hosfeld Estate, 414 Pa. at 605, 202 A. 2d at 71; Balfour v. Seitz, 392 Pa. 300, 303, 140 A. 2d 441 (1958).

In the instant case, the evidence indicates that both banks required signature cards to support the bank account and certificates. With respect to Ac-

---

1. To determine whether there is a duly established joint account, you must first look to the bank requirements. See estate of Chiara, 467 Pa. 586, 359 A. 2d 756 (1976) (court will not draw inference from lack of signature card if bank did not require signature cards); Young Estate, supra (properly signed signature card not containing survivorship language cured by unsigned certificate of deposit where testimony by bank officer indicated that the two documents plus keypunch card constituted complete contract).

counts no. 1 and no. 3, both parties signed the cards, Mr. Kuntzman's estate was entitled to the Chapter 63 presumption of the right of survivorship, and no evidence was presented to rebut this presumption. With respect to Account no. 2, the signature card was signed only by Mr. Kuntzman. His estate was therefore not entitled to the Chapter 63 presumption.[2]

The appellate courts have not yet considered Chapter 63 under circumstances similar to the instant case. However, our conclusion is supported by several of our colleagues in other counties. See Shegan Estate, 30 Fiduc. Rep. 460 (1980); Piontek Estate, 30 Fiduc. Rep. 468 (1980); Hicks Estate, 30 Fiduc. Rep. 199 (1979).

II.  Mental Competence

There was ample evidence presented at the hearings to establish that Estella M. Miller was competent at the time the three accounts were created.

The testimony of Dr. Williams, who was an impartial witness in this matter and who saw Estella M. Miller as a family physician every two or three weeks in the last year of her life, persuaded the master and we see no reason to disturb his finding. His testimony established that when the accounts

---

2. The testimony of Irene Dunbar, receptionist, that the First National Bank of Palmerton did not require both signatures on the signature card from regular customers proved only that a joint account in the nature of a convenience account could be opened at the request of one party. However, the mere opening of a convenience account does not create a presumption that the non-signing party, Estella M. Miller, vested a right of survivorship in the signing party, William M. Kuntzman. If First National Bank did not require signature cards for the creation of a joint account, Chapter 63 and case law would compel a different conclusion. See Chiara Estate, supra.

in question were created, in and around December of 1976, Estella M. Miller was well oriented in terms of time and place, was cognizant of others around her, fully aware of what she was doing, and appeared in his judgment to be mentally competent.

### III. Confidential Relationship

The discussion of the master in his report accurately sets forth the law in this area and his decision ably applies the law to the facts. The following language of the master in finding that no confidential relationship existed between Estella M. Miller and William M. Kuntzman is therefore adopted by the court:

"Having established that presumptive gifts were made by the decedent (Estella M. Miller) to William M. Kuntzman of the two accounts . . . we must now turn to the second question presented, namely, whether a confidential relationship existed between the parties at the time the joint assets were established and whether, in fact, Kuntzman exercised undue influence over the decedent in creating the accounts. If we find the existence of such a confidential relationship, then, of course, the burden would shift to respondent who would then be obliged to prove that the transfer was, in fact, a gift and was the free, voluntary and intelligent act of the alleged donor; in such a situation, no presumption of a valid gift will arise. Estate of Keeney, 465 Pa. 45, 348 A. 2d 108 (1975); Dzierski Estate, 449 Pa. 285, 296 A. 2d 716 (1972); In Re Estate of Scott, 455 Pa. 429, 316 A. 2d 883 (1974).

"In Scott, the Supreme Court observed that 'the concept of a confidential relationship cannot be re-

duced to a catalogue of specific circumstances. . . .'
The court further stated that:

" 'The essence of such a relationship is trust and
reliance on one side, and a corresponding opportun-
ity to abuse that trust for personal gain on the other.
With this in mind, each case must be analyzed on
its own facts. "Perhaps all that can be said with
certainty is that the normal rules respecting the
burden of proof will not obtain where there is some-
thing in the relationship or circumstances of the
donor and the donee that makes it doubtful that the
normal presumption of a gift has any basis in real-
ity." '

"Applying the foregoing general principles of law
to the testimony adduced at the two evidentiary
hearings held in the within matter, your master is
of the opinion that petitioner has not discharged his
burden of proof by showing by clear and convincing
evidence that a confidential relationship existed
between Estella M. Miller and William M. Kuntz-
man.

"The record shows that the parties resided to-
gether as husband and wife for nearly twenty years
and that they both demonstrated feelings of love
and affection for each other. These facts, coupled
with decedent's advanced age at the time of the
gifts and the evidence intending to show some de-
pendency of the decedent on Kuntzman, are clearly
insufficient as a matter of law to extablish a confi-
dential relationship. Dzierski Estate, supra.;
Northern Trust Co. v. Huber, 274 Pa. 329, 118 A.
217 (1922). What is necessary in order to prove such
a relationship is evidence showing that 'one oc-
cupies a superior position over the other—
intellectually, physically, governmentally, or

morally—with the opportunity to use that superiority to the other's disadvantage'. Union Trust Co. of New Castle v. Cwynar, 388 Pa. 644, 131 A. 2d 133 (1957). The record is devoid of any evidence of such a relationship in the instant case."

Accordingly, we enter the following

## ORDER

And now, December 31, 1980, it is hereby ordered and decreed as follows:

1. Exceptions of the estate of Estella M. Miller and the estate of William M. Kuntzman be, and are hereby dismissed.

2. The decree nisi entered in this matter on February 28, 1980 be, and is hereby affirmed.