In re J & J RECORD DISTRIBUTING CORPORATION (Substantively Consolidated With Record Museum, Inc., a Pennsylvania Corporation; Record Museum, Inc., a Delaware Corporation; and Record Museum, Inc., a New Jersey Corp.) Debtor.

John P. JUDGE, Trustee, Plaintiff,

v.

PINCUS, VERLIN, HAHN & REICH, P.C., Defendant.

Bankruptcy No. 80–03255K.
Adv. No. 87–0706S.

United States Bankruptcy Court, E.D. Pennsylvania.

Nov. 25, 1987.

Edward J. DiDonato, Philadelphia, Pa., for plaintiff/trustee.

Allen B. Dubroff, Philadelphia, Pa., for defendant.

John P. Judge, Philadelphia, Pa., Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

The instant proceeding presents an issue which our research indicates has rarely been addressed by other bankruptcy courts: does a law firm representing a Chapter 11 debtor-in-possession (hereinafter referred to as "DIP") have a duty to invest funds held by it in an interest-bearing account, such that the firm will be liable for interest which could have been received when it fails to do so? We hold that the answer to this question, generally, is affirmative, and that the firm here is liable for at least a portion of the sums demanded from it by the Trustee of the Debtors, the Plaintiff herein.

The first of the instant bankruptcy cases was commenced almost seven years ago on December 8, 1980, with the filing of an involuntary Chapter 7 case against the Debtor. This case was converted to a Chapter 11 proceeding on December 10, 1980. On December 29, 1980, the Defendant law firm, a medium-sized, prominent local firm which has performed a significant amount of high-quality representation in our court over the years, was appointed as counsel for the Debtor. The four cases in issue, presently consolidated, have been jointly administered since January 12, 1981.

On July 30, 1982, the jointly-administered cases were converted back to Chapter 7 proceedings. On August 13, 1982, a Trustee, the Plaintiff in this proceeding, was appointed, and, effective September 24, 1982, present counsel was appointed to represent him.

These cases have not proceeded swiftly since 1982. Objections to certain Proofs of Claim were filed in 1985 and resolved in 1986. On October 21, 1986, the Trustee's unopposed motion to substantively consolidate these cases was granted. On March 10, 1987, we conducted a hearing to show cause why the matters should not be dismissed for lack of prosecution, but we denied same upon the Trustee's representation that the cases would be prosecuted to their conclusion shortly. After effecting a partial distribution on May 6, 1987, the Trustee filed this Adversary proceeding on July 24, 1987.

After the filing of an Answer herein by the Defendant, the instant proceeding came before us for trial on September 22, 1987. By agreement of the parties, we entered an Order stating that the matter would be disposed of upon a Stipulation of Facts and Briefs of the parties. By November 13, 1987, all of these filings had been made.

The Stipulation of Facts has attached to it the Debtors' Accounting of Receipts and Disbursements, filed by the Defendant on November 14, 1983, more than a year after the appointment of the Trustee. The Accounting indicates that the Defendant maintained two relevant accounts for the Debtor.

The first Account in issue consisted of a sum which the Accounting states was the balance of $135,000.00 from the proceeds of the sale of the Debtors' leases and $16,100.00 proceeds from the sale of certain inventory, which were initially placed in the Defendant's escrow account at some unspecified date between April and July, 1981, and thereafter were placed in a Fidelity Bank non-interest-bearing checking account in July, 1981, allegedly anticipating certain disbursements. However, although the Account was reduced from $151,000.00 to $69,603.37 by August 24, 1981, the only

payment thereafter, through November, 1982, when the funds were turned over to the Trustee, was a $3,500.00 payment on March 24, 1982, in settlement of certain litigation.

The second Account consisted of the initial payment installment on the purchase of the leases of $140,000.00, made in April, 1981, $115,000.00 of which was invested in certificates of deposit at two different times, but which was consistently held in the Fidelity Bank checking account at all times after August 7, 1981, through November, 1982. This deposit was allegedly made "anticipating certain administrative payments to be made." However, apparently only five payments were made out of this account, bringing its balance of $118,-126.15 down to $99,157.64, as of November, 1982.

The parties also stipulated that the interest paid by Philadelphia banks in the period from July, 1981, through November, 1982, was five (5%) percent, and that, had the funds been placed in an interest-bearing account over that period, they would have realized $9,961.00 in interest.

The statutory basis of the Trustee's case is 11 U.S.C. § 345(a), which provides as follows:

§ 345. Money of estates.

(a) A trustee in a case under this title may make such deposit or investment of the money of the estate for which such trustee serves as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment.

Without citing any bankruptcy cases as authority, the Trustee argues that the DIP had a fiduciary duty to invest funds which were not being utilized for an extended period.

The Defendant argues that, given the history prohibiting investment of funds unless same was expressly authorized by the court under the Bankruptcy Act and the non-mandatory language of § 345(a), it had no duty to invest the proceeds. It cites perhaps the only previous case construing this Code section, *In re Peckinpaugh*, 50 B.R. 865, 868 (Bankr.N.D.Ohio 1985), in its favor. Finally, it argues that, even if a duty to invest might arise under certain facts, no duty arose here because it reasonably anticipated that the funds would be needed for disbursements on a regular basis, and therefore was justified in leaving them in checking accounts.

■ We believe that the controlling principles are enunciated in the RESTATEMENT (SECOND) OF TRUSTS (1959). We further believe that those principles establish that the Defendant was a "trustee" of the funds on behalf of the creditors of the DIP's estate. A trust is "a fiduciary relationship with respect to property, subjecting the party by whom title to the property is held to equitable duties to deal with the property for the benefit of another person" is present, *id.*, § 2, at 6. *See also* 76 AM. JUR. 2d 247–48 (1975). Given the "colorless" sense that the terms "title" and "ownership" are used in this section, *id.*, comment d, at 8, we hold that the Defendant held "title" or control of the funds and that the "ownership" of the property was in the creditors. Clearly, a DIP manages his property as a fiduciary for its creditors, in the highest sense of the term "fiduciary." *See Wolf v. Weinstein*, 372 U.S. 633, 642–53, 83 S.Ct. 969, 975–76, 10 L.Ed.2d 33 (1963); *In re Crouse Group, Inc.*, 75 B.R. 553, 557–58 (Bankr.E.D.Pa.1987); and *In re Baldwin–United Corp.*, 43 B.R. 443, 459–60 n. 22 (Bankr.S.D.Ohio 1984). Thus, a trust was indeed created. The Defendant, experienced and trusted bankruptcy counsel acting for the DIP as an agent of the DIP, is fully liable for its own negligent actions to the detriment of the beneficiaries of the DIP's duties as fiduciary. *See* RESTATEMENT (SECOND) OF AGENCY, § 354, at 125–29 (1958).

A trustee is "under a duty to the beneficiary to use reasonable care and skill to make the trust property productive." RESTATEMENT, *supra*, § 181, at 391. Thus, [i]n the case of money, it is normally the duty of the trustee to invest it so that it will produce an income. The trustee is liable if he fails to invest trust funds which it is his duty to invest for a period which is under all the circumstances un-

reasonably long. If, however, the delay is not reasonable, he is not liable.

If the trustee commits a breach of trust in neglecting within a reasonable time to invest the money, he is chargeable with the amount of income which normally would accrue from proper trust investment. *See* § 207 [*id.* at 468–69]. *Id.*, comment c, at 391.

This principle has been recognized in Pennsylvania law for many years. *See, e.g., In re Estate of Pitone,* 489 Pa. 60, 66–68, 413 A.2d 1012, 1015–16 (1980); *In re Jones' Estate,* 400 Pa. 545, 554–63, 162 A.2d 408, 413–17 (1960); *Bruner's Appeal,* 57 Pa. 46, 51–52 (1868); *Biles's Appeal,* 24 Pa. 335, 337 (1855); and *In re Estate of Vaughn,* 315 Pa.Super. 354, 360–61, 461 A.2d 1318, 1321 (1983). The law of other jurisdictions is consistent with that of this state. *See, e.g., Lynch v. John M. Redfield Foundation,* 9 Cal.App.3d 193, 88 Cal. Rptr. 86, 89–92 (1970); *Witmer v. Blair,* 588 S.W.2d 222, 224–25 (Mo.App.1979); *Cooper v. Jones,* 78 A.D.2d 423, 435 N.Y. S.2d 830, 834 (1981); *In re Estate of Kugler,* 117 Wis.2d 314, 344 N.W.2d 160, 164–65 (1984); and 76 AM.JUR.2d, *supra,* at 582–83.

We do not believe that the precatory language of 11 U.S.C. § 345(a) justifies a conclusion that the duty of a trustee to invest money held in his (her) hands is compromised. In the above cases relating to the duties of a trustee, there was no mandatory language in either the will or the relevant statutory law requiring the trustee to invest the funds in issue. This conclusion is emphasized with particular force in *Pitone, supra,* where the court holds that statutory language providing that " 'the personal representative may invest funds of the estate but shall have no duty to do so' " means

that where administration of an estate is concluded reasonably within the time contemplated by law, the personal representative has no duty to invest estate funds. But where, as in the instant case, administration of an estate is delayed for an extended period of time, it is incumbent upon the personal representative to invest the funds and not to permit them to remain idle. Where a personal representative breaches this duty, she may properly be surcharged for appropriate interest. 489 Pa. at 67–68, 413 A.2d at 1016 (quoting 10 Pa. C.S.A. § 3316).

This law is consistent with and fully supports the discussion of 11 U.S.C. § 345(a) in Collier, where it is stated that this provision *"directs* the trustee in a liquidation case to make such deposit of the money of the estate as will result in the 'maximum reasonable net return' while considering the safety of the investment," 2 COLLIER ON BANKRUPTCY, ¶ 345.02, at 345–11 (15th ed. 1987) (emphasis added), and that this Code section *"provides* for the deposit or investment of money of the estate by the trustee in a manner which will yield the greatest return while taking into account the safety of such deposit or investment." *Id.,* ¶ 345.05, at 345–12 (emphasis added).

The Defendant is correct that, under the predecessor Bankruptcy Act, investments by the Trustee were prohibited without court authority. *See, e.g., Huttig Mfg. Co. v. Edwards,* 160 F. 619, 622–23 (8th Cir. 1908); and *In re Dayton Coal & Iron Co.,* 239 F. 737 (E.D.Tenn.1916). However, since § 345(a) "constitutes a significant departure from ... the Bankruptcy Act," 2 COLLIER, *supra,* ¶ 345.02, at 345–11, we cannot agree with the Defendant's suggestion that the Defendant "most correctly followed the teachings of the Act to the extent that the Pincus firm did not deposit funds in an interest bearing account." Defendant's Memorandum of Law in Support of Answer to Complaint for Turnover Pursuant to 11 U.S.C. Section 542, at 6.

The *Peckinpaugh* decision must be considered in several lights. First, as the court reiterates in its Opinions in related cases, *In re Miller,* 50 B.R. 870, 873 (Bankr.S.D.Ohio 1985); and *In re Hartley,* 50 B.R. 852, 857 (Bankr.S.D.Ohio 1985), the court viewed all of the charges levelled at the Trustee in that case by a certain creditor as retaliatory to the Trustee's attempt to recover a large preferential transfer from that creditor and to thus attempt to get the Trustee off the case with overb-

lown contentions that he had violated his fiduciary duties in certain respects. Here, the Defendant has suggested no comparable lack of good faith on the Plaintiff's part. Secondly, the *Peckinpaugh* court reasoned that it is within a Trustee's discretion to refrain from "investing minimum amounts for short periods of time." 50 B.R. at 858. Here, the Defendant retained almost $200,000.00 in a non-interest-bearing account for well over a year. *Cf. Biles's Appeal, supra* (holding funds without distribution or investment for over a year held unreasonable). We believe that holding such a large sum in non-interest bearing accounts for well over a year constituted an abuse of the discretion accorded to the Defendant in handling these funds.

However, we must further state that, to the extent any general statements in the *Peckinpaugh* Opinion fail to acknowledge the law as set forth at pages 55–56 *supra,* we cannot, being cognizant of that body of law to the contrary, follow the *Peckinpaugh* court down a contrary path.

Having rejected the Defendant's major argument, i.e., that it had no duty to invest the DIP's funds under any circumstances, we must consider its alternative argument that the alleged anticipated need of availability of funds for prompt distribution excused any requirement to invest the funds in question here. We agree that there does appear to have been a significant amount of activity in the first account from July, 1981, through August 24, 1981. Giving the Defendant the benefit of any doubt, we hold that it did not breach any fiduciary duty until it failed to invest these funds as of January 1, 1982, after the account had been inactive for over four months. However, retention of such a large sum in a non-interest-bearing account thereafter was, in our view, negligently erroneous and a breach of the Defendant's fiduciary duty. Hence, we will reduce the Trustee's claim by slightly less than $1,500.00 to delete any claims for that period. We do not agree that the small volume of withdrawals from the second account justified leaving those substantial funds in a non-interest-bearing account at any time. Withdrawals in such modest numbers can be easily made from a savings account. We shall therefore proceed to enter judgment in favor of the Plaintiff in the amount of $8,500.00.

Having resolved what may be the only outstanding matter of consequence in these cases which has raised its head for almost two years, we must now attempt to move these cases along to completion. We shall therefore set down a status hearing in these cases in about fifteen (15) days to establish a schedule for their closing.

An Order consistent with the foregoing Opinion shall be entered.