J-A23034-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF RICHARD C. KAMUS, THERESA KELLY AND CHARLES KAMUS | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| KAREN MARTINELLI | : : : | No. 77 MDA 2023 |
| APPEAL OF:  THERESA KELLY AND CHARLES KAMUS | : : | |

Appeal from the Order Entered January 10, 2023
In the Court of Common Pleas of Luzerne County Orphans' Court at
No(s): 4021-1531

BEFORE:   LAZARUS, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:              **FILED DECEMBER 08, 2023**

Appellants Theresa Kelly and Charles Kamus appeal from the order entered by the Honorable Tarah Toohil of the Court of Common Pleas of Luzerne County denying their petition to remove Appellee Karen Martinelli as the executrix of their father's estate. After careful review, we affirm.

Richard C. Kamus ("Decedent") passed away on June 15, 2021, leaving behind three children, Appellants and Appellee, as well as multiple grandchildren. In his will, Decedent appointed his wife, Margaret Kamus, as executrix, and provided if his wife predeceased him, Appellee would serve as an alternate executrix. Decedent's wife had passed away just a few months earlier on January 28, 2021. On June 30, 2021, the trial court appointed

_____

[*] Former Justice specially assigned to the Superior Court.

Appellee as executrix of the estate. The following day, Appellee's counsel received notice that Appellants had retained counsel in this matter.

Decedent's will included specific bequests of $10,000 to each of his seven grandchildren, to be held in individual trusts for their benefit until their eighteenth birthdays. Decedent nominated Appellee to serve as Trustee of these trusts. The will also directed Decedent's personal representative to sell his home in Swoyersville, Pennsylvania, and the contents of the home at a private or public sale and to add the proceeds to the residuary estate.

The will provided that Decedent's residuary estate would be divided as follows: 40% to his daughter, Appellee, 20% to his daughter, Appellant Kelly, 20% to his son, Appellant Kamus, and 20% to his grandson, Galvin Richard Duesler ("Duesler"), who is Appellee's son that lived with Decedent for nine years preceding Decedent's death.

Thereafter, Appellee set out to clean, organize, and make repairs to Decedent's home to prepare to list the residence for sale. Once finished, Appellee's counsel contacted Appellants to schedule a walkthrough of the residence, during which Appellants would have the opportunity to tag items they wanted. The walkthrough took place on February 9, 2022.

On February 16, 2022, Appellants filed a petition to remove Appellee as the personal representative of Decedent's estate, accusing her of misconduct including, *inter alia*, removing valuable items from Decedent's home and retaining them for her benefit without any accounting to the Estate, disposing

of items which Appellants may have attributed sentimental value, and denying Appellants access to the home.

Thereafter, on May 1, 2022, the trial court directed Appellee to show cause as to why she should not be removed as personal representative and stayed any distribution of estate assets to Appellee or her children. On May 6, 2022, the trial court entered an order staying the sale of Decedent's residence as well as the sale, distribution, and disposition of his personal property.

Due to continuances filed at the agreement of both parties, hearings on the petition to remove Appellee as executrix were not held until December 20, 2022 and December 27, 2022. At the hearings, the parties agreed that Decedent's home and garage were filled with numerous items, the majority of which were unusable and needed to be discarded. Appellants acknowledged that the residence was a "mess" as they admitted that their father, Decedent, had a hoarding problem throughout the course of their lives. N.T., 12/20/22, at 54. Appellant Kamus testified that his "father lived in a room that you couldn't even walk in. There was a path to his bedside, and it was packed floor to ceiling, closets and all." *Id*. at 56. Appellee submitted photos into evidence to demonstrate the amount of clutter in the home.

Although Appellee had contacted Diana Getz, an antique dealer, to attempt to hold an estate sale of Decedent's possessions, Ms. Getz indicated that it would not be cost effective to hire her services to clean out the home as there were too many possessions in the home. *Id.* at 209. Ms. Getz recommended that Appellee clean up the estate on her own and discard

broken, unusable, and unwanted items. *Id.* at 208-209. When Appellee contacted a realtor to sell the home, she was advised that the home would have to been cleaned and repairs would have to be done before the home was listed for sale. *Id.* at 206-207.

While Appellants claimed to have offered to help Appellee clean out the residence, Appellee explained that she did not accept the help of her family as the siblings did not have a close relationship. *Id.* at 179-80. Appellee indicated that Appellant Kamus had threatened her while Decedent was still living and had retained counsel immediately after she had been appointed executrix. *Id.* at 180; N.T., 12/27/22, at 20.

As such, Appellee hired individuals to assist her in sorting through Decedent's personal possessions. One of those individuals, Jared Brady, runs a landscape business in which he performs property clean up and management projects, but is also a mechanic and welder by trade. Brady testified that the property was in "disarray" and contained a lot of "stuff" including lawn mowers, snow blowers, snowplows, and various tools. N.T., 12/20/22, at 17. However, Brady believed that the majority of the items were "not in working order" and would be difficult to repair due to their age and unavailability of replacement parts. *Id.* at 20. Brady denied taking any items from the property and indicated that he did not observe Appellee remove any items either. *Id.* at 20-21.

Appellee also hired another individual, Michael Bean, to assist her in cleaning out the residence. Bean confirmed that there were a few lawnmowers

that were inoperable and full of rust. Bean indicated that he worked for about four months, helping Appellee discard anything that was not salvageable from the property. *Id*. at 30-31. Bean did not witness Appellee taking anything from the estate for her personal use. *Id*.

Appellee's son, Duesler, had his own personal property at Decedent's residence, where he had resided for nine years. N.T., 12/27/22, at 33. Duesler, who worked in construction, had tools and other equipment stored in Decedent's garage as well as his truck, motorcycle and quad. *Id*. at 33-34. As Appellee was attempting to clean out the house to prepare the residence for sale, she instructed Duesler to remove his property from the residence. N.T., 12/20/22, at 171. Duesler testified that he removed his property, which he had purchased on his own or had been given to him by Decedent while he was still alive. N.T., 12/20/22, at 88-91, 104.

On January 10, 2023, the trial court denied Appellants' petition for removal, lifted the stay of the sale of Decedent's residence and personal property, and directed Appellee to complete administration of the estate.

Appellants filed a timely notice of appeal and complied with the trial court's direction to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellants raise the following questions for our review on appeal:

> A. Did the lower court err when it ruled against the manifest weight and sufficiency of the evidence and denied the petition to remove [Appellee] as Executrix of Decedent's Estate?

B. Did the lower court err when it failed to timely rule on the motion for sanctions because the motions for sanctions requested an adverse inference against [Appellee] at the time of the hearing and the court did not rule on the motion for sanction until more than two (2) weeks after the hearing?

C. Did the lower court err when it failed to timely rule on evidentiary objections during the hearings held in December of 2022?

Appellants' Brief at 6.

First, Appellants claim the trial court erred in denying their petition to remove Appellee as executrix of their father's estate. Appellants argue that Appellee wasted and mismanaged the estate as they alleged that Appellee and her son, Duesler, seized some of Decedent's personal property which belonged to the estate for their own benefit and failed to credit the value of the items against their share of the inheritance. Appellants also contend it was a conflict of interest for Appellee to serve as executrix as she claimed to be joint owner of several Decedent's bank accounts that contained thousands of dollars.[1]

In reviewing a trial court's decision on a petition to remove an executrix, such a matter is "vested in the sound discretion of the trial court, and thus we will disturb such a determination only upon a finding of an abuse of that discretion." *In re Estate of Andrews*, 92 A.3d 1226, 1230 (Pa.Super. 2014) (quoting *In re Estate of Mumma*, 41 A.3d 41, 49–50 (Pa.Super. 2012)).

_____

[1] After Appellants filed their motion to remove Appellee as executrix of the estate, they challenged Appellee's assertion that she was the joint owner on several of Decedent's bank accounts. The trial court did not have the opportunity to definitively determine the ownership of the disputed bank accounts before this appeal was filed. During the pendency of this appeal, the trial court granted a stay with respect to the bank accounts in Decedent and Appellee's names.

Section 3182 of the Pennsylvania's Probate, Estates, and Fiduciaries Code gives trial courts "the exclusive power to remove a personal representative" of the estate for several defined reasons, including when the personal representative "is wasting or mismanaging the estate, …has failed to perform any duty imposed by law, … [or] when, for any other reasons, the interests of the estate are likely to be jeopardized by his [or her] continuance in office." 20 Pa.C.S.A. § 3182(1), (5).

However, "[a] testator's selection of a particular person to serve as their personal representative 'represents an expression of trust and confidence,' and removal of a personally chosen individual is thus considered to be a 'drastic remedy' that requires clear and convincing evidence of a substantial reason for removal." *In re Estate of Mumma*, 41 A.3d at 49–50 (quoting *In re White,* 484 A.2d 763, 765 (Pa. 1984); *In re Estate of Pitone,* 413 A.2d 1012, 1016 (Pa. 1980); *In re Estate of Lux,* 389 A.2d 1053, 1059–60 (Pa. 1978)).

We begin by emphasizing the Decedent selected Appellee to serve as executrix of his will, which demonstrated that Decedent had trust and confidence that Appellee would serve well as his personal representative upon his death. The record also shows Decedent entrusted Appellee with the responsibility to handle her parents' personal finances and care while they still were living. N.T., 12/20/22, at 225; N.T., 12/27/22, at 7, 54. In 2015, Decedent and his wife gave Appellee power of attorney and permitted her access to bank accounts containing thousands of dollars to pay their bills. *Id*.

Appellee had served as her parents' caretaker and assisted them with various daily tasks, such as grocery shopping, making meals, transporting them to doctors' appointments, assisting Decedent with his VA paperwork, cutting the grass, removing snow, and other related responsibilities. *Id*.

As such, the trial court properly deferred to Decedent's choice of representative and was correct to emphasize that it would be a drastic remedy to remove Appellee as executrix unless there was clear and convincing evidence there was substantial reason for her removal.

We also agree with the trial court's assessment that Appellee was presented with a "monumental task" in preparing Decedent's residence for sale due to the quantity of possessions that Decedent had collected over his lifetime. Trial Court Opinion (T.C.O.), 5/2/23, at 5. Appellants conceded that they had foreseen that the cleanup of Decedent's home would be a large task for their family due to Decedent's hoarding problem, which had persisted for decades. Although Appellants did offer to assist Appellee in cleaning out the home, Appellee chose to decline this help as the strained relationship between the siblings may have led to additional confrontation and animosity between the parties.

While Appellants' primary concern on appeal is their argument that Appellee gave her son, Duesler, preferential treatment to remove items from the property, they ignore the fact that Duesler lived with Decedent for nine years and still had a lot of personal property in Decedent's residence and garage. The trial court found that Appellee had instructed Appellant to remove

his items from the home because she was responsible for cleaning out the property. Appellee testified that she understood her role as executrix in properly administering Decedent's real and personal property, emphasizing that she knew she could not "just hand stuff out." N.T., 12/20/22, at 170-71. Duesler testified that he only removed his own property or tools given to him by Decedent before he died.

Our review of the record provides support for the trial court's determination that Appellants failed to present clear and convincing evidence that Appellant was wasting or mismanaging the estate. The trial court determined that Appellee "acted diligently in collecting the Decedent's assets under the most difficult of circumstances due to Decedent's hoarding." T.C.O. at 8. We also observe that the trial court emphasized that it "**finds** [**Appellee**] **and her witnesses credible, while at the same time** [**Appellants**] **did not sustain their claims that she was guilty of stealing items which were part of the estate**." *Id*. at 9 (emphasis in original).

In addition, we also reject Appellants' contention that Appellee's claim to some of Decedent's checking accounts necessarily created a conflict of interest that warranted her removal as executrix. In *In re Pitone*, 413 A.2d 1012, 1017 (Pa. 1980), our Supreme Court found that the fact that an executrix claimed ownership of a joint bank account in her brother's estate did not "necessitate her removal" from her position. The Supreme Court noted that the executrix had demonstrated a willingness to comply with the trial court's orders. Further, the Supreme Court observed that requiring the

executrix to be replaced would cause additional delay and expense to the estate which was near its conclusion.

Similarly, in this case, the trial court found that Appellee had acted "in a competent and appropriate manner" in her role as executrix. The trial court relied on **Pitone** for its conclusion that the sole fact that Appellee claimed ownership to the some of Decedent's bank accounts did not justify her removal.[2] Further, the trial court indicated that the removal of Appellee as executrix would only further delay the administration of the estate.

Accordingly, we conclude that the trial court correctly determined that the trial court did not abuse its discretion in finding that Appellants did not meet their burden to show that removal of Appellee as executrix was warranted.

In their second claim, Appellants assert the trial court erred in failing to award sanctions against Appellee for failing to comply with the trial court's discovery order requiring the production of all of Decedent's bank statements beginning in April 2017 as well as Decedent's cell phone. Appellants claim that Appellee failed to give them the requested documents until the day before the hearings in this case. Appellants requested an adverse inference against

---

[2] As noted above, the trial court has not yet conclusively determined the ownership of the disputed bank accounts. In its order denying Appellants' petition to remove Appellee as executrix, the trial court noted that "[t]his order does not preclude [Appellants] from litigating the issue of ownership of the accounts which were in the names of the Decedent and [Appellee] on the date of Decedent's death. Order, 1/10/23, at 2.

Appellee that Decedent did not intend that Appellee would be given the remaining funds in his accounts.

Our rules of civil procedure allow a trial court to "make an appropriate order" if a party "fails to make discovery or obey and order of court respecting discovery." Pa.R.C.P. 4019. "The decision whether to sanction a party, and if so the severity of such sanction, is vested in the sound discretion of the trial court." *McGovern v. Hosp. Serv. Ass'n of Ne. Pennsylvania*, 785 A.2d 1012, 1015 (Pa.Super. 2001) (citing *Christian v. Pennsylvania Financial Responsibility Assigned Claims Plan*, 686 A.2d 1, 4 (Pa.Super. 1996)).

The trial court found in this case that Appellee did not willfully violate its discovery order as it was "satisfied that [Appellee] made every effort to obtain all bank statements relating to the Decedent's accounts" and indicated that "[a]ll copies of the bank statements were turned over to Appellants' counsel." T.C.O. at 11. Further, the trial court noted that the parties were able to access Decedent's phone and had the opportunity for an *in camera* review of the phone before the trial court.

Given the trial court found that Appellants did not establish that they suffered prejudice from Appellee's delay in providing discovery, it deemed Appellants' request for an adverse inference against Appellee to be a harsh and severe remedy that was unwarranted. We cannot find that the trial court abused its discretion in refusing to impose Appellants' requested sanctions.

Lastly, Appellants claim the trial court did not issue timely rulings on their evidentiary objections during the December 2022 hearings. "Our

standard of review for a trial court's evidentiary rulings is narrow, as the admissibility of evidence is within the discretion of the trial court and will be reversed only if the trial court has abused its discretion." *Commonwealth v. Hernandez*, 230 A.3d 480, 489 (Pa.Super. 2020) (quoting *Commonwealth v. Melvin*, 103 A.3d 1, 35 (Pa.Super. 2014)).

At the conclusion of the hearings in this case, Appellee moved to admit Exhibits 1 through 50B. N.T. 12/27/22, at 131-32. Appellants objected to the admission as Appellee had not offered testimony referring to all the exhibits at the hearing. The trial court gave Appellants the opportunity to submit a post-trial memorandum as to the particular exhibits they found objectionable.

While the trial court did not discuss this specific claim in its January 10, 2023 order denying Appellants' motion to remove Appellee as executrix, it subsequently clarified in its opinion pursuant to Pa.R.A.P. 1925(a) that it had only considered the testimony of the parties and the photograph exhibits presented by Appellee.

Appellants do not challenge the trial court's finding that Appellee had properly authenticated the photos that she entered into evidence. After Appellee testified that she was tasked with cleaning and selling a home and garage filled with countless items, most of which were "junk," she indicated that she had personally taken the photographs of Decedent's home to demonstrate her claim to the trial court.

As to Appellee's remaining exhibits that were not photographs, the trial court entertained Appellants' argument that such items were not properly

authenticated and did not consider those exhibits in reaching its conclusion that removal of Appellee as executrix was unwarranted. Further, Appellants do not specifically identify the exhibits that they found objectionable or explain how the supposed admission of such exhibits prejudiced Appellants in any way. We decline to review this claim further.

For the foregoing reasons, we affirm the trial court's order denying Appellants' motion to remove Appellee as executrix.

Order affirmed.


Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 12/08/2023