461 A.2d 1318

**In re ESTATE OF Walter VAUGHN, Deceased.**

**Appeal of Jack VAUGHN.**

Superior Court of Pennsylvania.

Argued Jan. 25, 1983.

Filed June 24, 1983.

R. Heffner, Huntingdon, for appellant.

H. Fry, Mifflintown, for appellee.

Before WICKERSHAM, CIRILLO and WATKINS, JJ.

CIRILLO, Judge:

Walter Vaughn, a resident of Juniata County, died intestate on February 22, 1967 survived by his wife, Sadie Vaughn, and nine adult sons and daughters. On June 19, 1967, Letters of Administration were issued by the Register of Wills of Juniata County to Homer Vaughn, one of the decedent's sons. On September 14, 1968, the administrator filed his First and Intended Final Account of the Estate. On October 14, 1968, Sadie Vaughn filed exceptions to the administrator's account for failure to provide a family exemption. However, Sadie Vaughn died before any action was taken on her exceptions. The administrator's account lay dormant for a period of approximately 12 years until May 19, 1980 when appellant Jack Vaughn, another of the decedent's sons, filed exceptions and a petition for the appointment of an auditor. Appellant's exceptions included *inter alia*, the administrator's failure to include in his account of the estate certain assets of the decedent in his possession, specifically, a 1956 Ford tractor and a Springfield rifle, and the administrator's liability for failure to invest the estate funds during the period his account of the estate was open.

358

The Orphans' Court of Juniata County appointed an auditor and a hearing was held on July 11, 1980. At that hearing, both the administrator and the appellant testified. The administrator testified that he did not include the tractor and rifle in his account of the estate because his father intended that he have those items after his father's death. The parties stipulated that no income had been earned by the estate since the filing of the administrator's account. The administrator had kept the estate funds in a non-interest bearing checking account. The parties further stipulated that the balance in that checking account had been $4,706.86 since the date of the filing of the administrator's account.[1]

On November 13, 1980, the auditor filed his report. The auditor found that no valid inter vivos gift of the tractor and rifle had been made by the decedent to the administrator, and the auditor included these assets in the estate. The auditor assessed the value of the tractor and rifle at $1,500.00 and $150.00 respectively. With these assets included, the total estate available for distribution on the date of the filing of the administrator's account was $6,389.70.[2] The auditor also found that the administrator had breached his fiduciary duty to invest the estate funds and surcharged him 2% interest. This surcharge amounted to $1,492.56 and brought the total estate on the date of the auditor's report to $7,882.26. The auditor assessed his fee at $1,608.00 and imposed the $2,164.68 total cost of the audit on the estate. Both the appellant and the administrator filed exceptions to the auditor's report. After a hearing, the Orphans' Court

1. The administrator's account showed total receipts of $5,347.22, minus total disbursements of $1,679.36, leaving a balance of $3,667.86. However, checks made payable to Henry Vaughn in the amounts of $900.00, $25.00 and $14.00 as reimbursement for decedent's funeral, physician and ambulance expenses paid by Henry Vaughn were never cashed. Also, $100.00 reserved by the administrator in his account for a headstone was moot since at the time of the audit a headstone had already been erected.

2. This figure also includes $32.84, the amount of a hospital bill paid by the administrator but disallowed by the auditor as a result of the efforts of appellant's counsel.

reduced the auditor's compensation to $1,337.00. All other exceptions were denied, and this appeal followed.

On appeal, appellant raises several claims of error, all relating to the Orphans' Court's assessment and imposition of various fees, costs and surcharges. Preliminarily, we note that the imposition of costs in an Orphans' Court proceeding is a matter left to the sound discretion of that court and will not be disturbed on appeal absent an abuse of discretion. *Istocin's Estate,* 126 Pa.Super. 158, 190 A. 382 (1937). An abuse of discretion occurs when the court misapplies existing law, makes a manifestly unreasonable judgment, or rules with partiality, prejudice or ill will. *M. London, Inc. v. Fedder Corp.,* 306 Pa.Super. 103, 452 A.2d 236 (1982). It is within this scope of review that we proceed to consider appellant's claims of error.

Appellant first contends that the Orphans' Court erred in refusing to order that his counsel fees be compensated from estate funds. While ordinarily the exceptant to the account of an administrator must pay his own counsel fees, in very exceptional cases the exceptant may be allowed counsel fees out of estate funds. *In re Estate of Lux,* 480 Pa. 256, 389 A.2d 1053 (1978). Where the estate is substantially benefitted by the efforts of an exceptant's counsel, which have resulted in an administrator being required to include in his inventory of the estate valuable assets previously not included, it is within the discretion of the court to compensate the exceptant's counsel fees out of estate funds. *Id.* In the instant case, the Orphans' Court recognized that the estate had received benefits as a result of the efforts of appellant's counsel but found these benefits to be overshadowed by the delay in the pursuit of appellant's exceptions.

Notwithstanding this delay, we find that the Orphans' Court abused its discretion in denying compensation for appellant's counsel fees from the estate funds. There can be no doubt that the estate was substantially benefitted by the efforts of appellant's counsel. 'As a result of these

efforts, assets valued at $1,650.00 were brought into the estate, a bill in the amount of $32.84 paid by the administrator was disallowed, and a surcharge of $1,492.56 was imposed upon the administrator. The total increase in the estate resulting from counsel efforts was $3,175.40. Given this substantial increase in this modest estate, the delay is not dispositive under the circumstances of this case. The effect of the Orphans' Court's denial of compensation for appellant's attorney's fees out of estate funds is to permit the other heirs, who have never filed exceptions, to reap the benefits of the efforts of appellant's counsel without having to share in the expense of producing those benefits. This would be a manifestly unreasonable and inequitable result. As our Supreme Court recognized in the early case of *Commonwealth ex rel. Hensel v. Order of Solon*, 193 Pa. 240, 242–43, 44 A. 327, 328 (1899),

> [W]here the attorney of one of several parties, all equally interested, secures a fund which would otherwise have been embezzled or lost, and all share equally in the distribution, it is but equitable that all should share in the expense which produced the fund, although but one moved in the matter.

Under the circumstances of this case, appellant must be allowed reasonable counsel fees out of the estate funds.

■ Secondly, appellant claims that the surcharge imposed on the administrator of 2% interest for failure to invest the estate fund is inadequate. Appellant argues that the surcharge should be at least 5% to coincide with the prevailing interest rates paid by banks on savings accounts. It is well established that where the administration of an estate is delayed for an extended period of time, it is the duty of the personal representative to invest the estate funds, and where he breaches this duty of investment he may be charged with appropriate interest. *In re Estate of Pitone*, 489 Pa. 60, 413 A.2d 1012 (1980); *Lare Estate*, 436 Pa. 1, 257 A.2d 556 (1969). The relevant section of the Probate, Estates and Fiduciaries Code provides, "A personal representative who has committed a breach of duty with

respect to estate assets shall, in the discretion of the Court, be liable for interest not exceeding the legal rate on such assets." 20 Pa.C.S.A. § 3544. The maximum lawful interest rate in the Commonwealth is 6%. 41 P.S. § 201. Subject to this limitation, the determination of what rate of interest to surcharge an administrator is a matter left to the discretion of the Orphans' Court. *See In re Estate of Pitone, supra; Lare Estate, supra.*

In the present case, the administrator permitted the estate funds to remain in a non-interest bearing checking account for approximately 12 years. Clearly this constituted a breach of his duty of investment. The auditor surcharged the administrator 2% interest and the Orphans' Court affirmed. In affirming the auditor's surcharge of 2% interest, the Orphans' Court considered as mitigating factors the relatively small size of the estate, that the administrator himself was an heir, that there was no evidence of self-dealing involving the estate funds, and the appellant's failure to file exceptions for 12 years. The 2% interest surcharge imposed on the administrator amounted to $1,492.56. Under all the circumstances of this case, the Orphans' Court could properly limit the interest surcharge to 2%.

Appellant also contends that since the audit in this case was necessitated by the administrator's failure to include a substantial portion of the assets of the estate in his account, he should bear the cost of the audit. While ordinarily the costs of an audit are deducted from the estate, an administrator may be charged with the costs of an audit made necessary by his fault. *Lewis Estate,* 349 Pa. 455, 37 A.2d 559 (1944); *Kline's Estate,* 280 Pa. 41, 124 A. 280 (1924); *Grollman's Estate,* 273 Pa. 565, 117 A. 351 (1922); *Istocin's Estate, supra.* However, the disposition of the costs of an audit is within the discretion of the Orphans' Court. *Istocin's Estate, supra.* In the case at bar, the Orphans' Court concluded that the administrator's conduct in this case was not so improper as to require that the costs of the audit be imposed upon him. The court

362

found that the administrator had simply breached his duty to invest the estate funds while waiting for proceedings on his account. The court found that there was no bad faith, gross negligence or misuse of estate funds. We note also that while the auditor and Orphans' Court held that no valid inter vivos gift of the tractor and rifle had been made by the decedent to the administrator, there is no evidence of bad faith or concealment of these assets on the part of the administrator. On the contrary, there was evidence that the appellant borrowed the tractor from the administrator, used it and returned it to him. Under the circumstances of this case, we will not reverse the Orphans' Court determinations that the costs of the audit should be borne by the estate.

 Finally, appellant contends that since the total assets of the estate are less than $10,000, the auditor's fee of $1,337.00 is excessive. The compensation of an auditor is a matter left largely to the sound discretion of the Orphans' Court. *Matthews Estate,* 431 Pa. 616, 246 A.2d 412 (1968). The factors to be considered in measuring an auditor's compensation include the nature and difficulty of the questions involved, the character and volume of the work done, and the time necessarily required to complete the work. *Lewis Estate, supra; Wilbur's Estate,* 334 Pa. 45, 5 A.2d 325 (1939). The amount involved in the account also must be considered. *Lewis Estate, supra.* In the instant case, the auditor originally assessed his fee at $1,608.00, based on the rate of $40.00 per hour.[3] The Orphans' Court allowed compensation on an hourly basis but reduced the rate to $35.00 per hour to bring it in line with the hourly rate paid specially appointed public defenders in Juniata County. The court found that due to the lack of opportunity in the County to acquire experience in the auditing of accounts, the auditor's inexperience was excusable and the amount of time spent by the auditor was not unreasonable. The court

3. The Orphans' Court discovered that this figure was the result of a miscalculation in the number of billable hours and thus overbilled by $80.00.

also found that the auditor's work product provided ample verification of the time spent in its preparation. The Orphans' Court reduced the auditor's compensation to $1,337.00—compensation for 38.2 hours at $35.00 per hour. The Orphans' Court of Juniata County was in a better position than we to form a correct judgment of the reasonableness of the auditor's fee, and we will not disturb it on appeal.

Affirmed in part, reversed in part.