In re Daniel PADEZANIN, a/k/a Daniel
Padezanin, Sr., Deceased,

Appeal of Debra Padezanin, Dorothy
A. Sklack, and Danielle P.
Sweesy, Appellants.

Superior Court of Pennsylvania.

Argued Feb. 27, 2007.
Filed Nov. 27, 2007.

Donald J. Balsley, Pittsburgh, for appellants.

Robert J. Campbell, Beaver, for appellee.

BEFORE: MUSMANNO, BOWES and JOHNSON, JJ.

OPINION BY BOWES, J.:

¶ 1 This is an appeal from a final order directing the distribution of the estate of Daniel Padezanin. With the exception of an award of rental to the estate from Debra A. Florida a/k/a Debra Padezanin in the amount of $4,075 and a remand for calculation of a precise surcharge amount for her failure to file a fiduciary income tax return, we affirm the orphans' court's decisions in this matter.

¶ 2 Daniel Padezanin died on March 26, 2002, survived by a son, Daniel Padezanin Jr. ("Appellee"), as well as three daughters, Danielle P. Sweesy, Debra A. Florida a/k/a Debra Padezanin, and Dorothy A. Sklack (collectively "Appellants"). On May 1, 2002, the Register of Wills of Beaver County admitted a will dated February 27, 1998, to probate and letters testamentary on the estate were granted to Debra. Appellee filed an appeal from probate of the will. On June 19, 2003, the orphans' court concluded that the February 27, 1998 will was invalid due to the fact that after its execution, the name of an after-born heir was handwritten into its terms. Thus, the will's admission to probate was vacated, and Debra was removed as executrix. Due to animosity among the intestate heirs, the court appointed a neutral personal representative, Layden C. Sadecky, Esquire.

¶ 3 In the meantime, on December 18, 2002, Debra, who was then still acting as the personal representative of the estate, filed an inventory. Appellee filed objections to that inventory claiming, among other things, that Debra had improperly omitted real estate that the decedent owned in Sewickley Township from her inventory of his assets. The orphans' court deferred ruling on those objections until an accounting of the estate was prepared. Debra prepared a first and final account covering the period of her administration of the estate. Appellee renewed his objections to the omission of the real estate from her accounting of the estate assets.

¶ 4 After a hearing on January 4, 2005, the orphans' court sustained Appellee's objections and voided five deeds executed by the decedent on June 30, 1998. Those deeds purported to transfer the decedent's real estate either to Danielle individually, Dorothy individually, or Danielle and Dorothy as joints tenants with right of survivorship. The five deeds had been recorded on August 19, 2002, four months after the death of Daniel Padezanin and over four years after they had been executed. Mr. Sadecky then prepared an accounting of his administration. Objections were filed both by Appellee and Appellants. This appeal followed resolution of the objections and entry of an order directing distribution of the estate assets.

¶ 5 The first issue that we resolve involves the orphans' court's conclusion that the decedent did not make a valid *inter vivos* gift of his real estate located in Sewickley. We note our standard of review.

Our standard of review of the findings of an orphans' court is deferential.

When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.

*In re Estate of Geniviva*, 450 Pa.Super. 54, 675 A.2d 306, 310 (1996). However, "we are not constrained to give the same deference to any resulting legal conclusions." *Id.* "Where the rules of law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree."

*In re Smith*, 890 A.2d 1082, 1086 (Pa.Super.2006) (quoting *In re Estate of Harrison*, 745 A.2d 676, 678–79 (Pa.Super.2000)).

¶ 6 The relevant facts follow. The decedent owned twenty-three lots and a fifteen foot strip of land located in Sewickley Township, Beaver County. A one-story ranch home located on two of the lots has the address of 1315 Suzanne Street. Another two lots with the address of 1395 Harvey Run Road contain a building used by the decedent as a bar and restaurant. Located at 1325 Harvey Run Road are another two lots containing a building with retail space on the ground floor and an apartment on the second floor. The other lots are vacant. As previously noted, the five deeds in question conveyed all twenty-three lots from the decedent either to Dorothy individually, Danielle individually, or Dorothy and Danielle as joint tenants. The deeds were brought by the decedent to a paralegal working for a Pittsburgh law firm. At that time, the deeds already had been drafted, and there was no evidence presented as to who created those documents. The paralegal notarized them and returned them to the decedent. As described, the deeds were recorded four months after the decedent's death, and

also after Appellee filed his appeal from the probate of the decedent's will.

¶ 7 The orphans' court's factual findings regarding the deeds follow:

> The evidence presented was that the decedent handed an envelope to David Sklack, husband of Dorothy Sklack, one of the appell[ants], and said "these deeds [are] for my girls, take them and put them someplace safe." This occurred sometime in the summer of 1998. [Mr. Sklack] testified that he took them and put them in a desk in his business which was next door. He also said that his wife was not present when this occurred. His testimony was that the next time the deeds came to his attention was when he accidentally found them in the desk several months after the decedent's death. The discovery occurred after the will contest was filed. The circumstances of how the deeds were discovered seems unusual, to say the least. David Sklack didn't know when he found them and didn't know what he was looking for.
>
> Dorothy Sklack testified that she knew about the deeds, and knew where they were. This was in contradiction to prior testimony she had given before the Court. Her first testimony under oath was that she was not aware of the deeds until after her father's death. The court found that her testimony was not reliable. The Court had to conclude that she did not know about the deeds nor did she know where they were, otherwise she would have produced them at the time of the decedent's death.

Trial Court Opinion, 8/7/06, at 3.

¶ 8 Thus, Appellants' own evidence established conclusively that the decedent gave absolutely no instructions to Mr. Sklack regarding delivery of the deeds to the two donees. The record supports the orphans' court's conclusion that neither of the two beneficiaries was aware of the existence of the deeds until after the decedent's death, and we must accept that conclusion for purposes of this appeal. Furthermore, during his lifetime, the decedent retained complete control over the real estate, continuing to reside at the property located on 1315 Suzanne Street, to operate and collect profits from the two business properties, and to pay the expenses attendant to ownership of all twenty-three lots.

¶ 9 A valid *inter vivos* gift of real estate has two components: "(1) a donative intent upon the part of the grantor [and] (2) a delivery of the deed to the grantee, either actual or constructive, which divested the donor of all dominion over the property and invested the donee therewith." *Fiore v. Fiore*, 405 Pa. 303, 305–06, 174 A.2d 858, 859 (1961). A deed does not have to be delivered directly to the grantee in order for the gift to be effective, and it can be "placed in the possession of a third party for delivery to the grantee upon the happening of a **specified** contingency." *Id.* at 306, 174 A.2d at 859–60 (emphasis in original). Nevertheless, "the mere handing of the executed deed, without more, to a third person who is an agent of the grantee is ineffective." *Id.* at 306, 174 A.2d at 860. Thus, "for delivery to be effectual and to result in a culmination of the transition of the title, **there must be an express and definite instruction** that the deed is to be given to the grantee then or at some future time." *Id.* (emphasis in original).

¶ 10 The record establishes that Mr. Sklack was not given any further instruction by the decedent as to when to deliver the deeds to the two grantees, the donees were not aware of the deeds' existence until after the decedent's death, the decedent retained complete control over the properties, and the donees had no control

over them. Thus, the orphans' court did not commit an error of law in ruling that the deeds were not effectively delivered to the donees and that there was not an *inter vivos* gift of the real estate described in those deeds. *Id.*; *cf. Chambley v. Rumbaugh*, 333 Pa. 319, 5 A.2d 171 (1939) (evidence relied upon by orphans' court established that decedent gave deeds to third party with specific instruction that they were to be given to donees upon decedent's death). Thus, we are compelled to affirm the orphans' court's inclusion of the real estate in the estate assets.

¶ 11 Appellants next assail the orphans' court's decision to award the estate rental. This rental was assessed against Debra, Danielle, and Padezanin's Inn, Inc. as a result of their occupancy of the real estate that was included in the estate due to the fact that the decedent did not make a valid *inter vivos* gift of the real estate. Padezanin's Inn, Inc. is the corporate entity that operated the bar and restaurant located at 1395 Harvey Run Road. It is a family-owned corporation; thus, during the period that rent was charged, that corporation was owned by intestate heirs of the decedent. Debra resided at 1325 Harvey Run Road when her father died, but she moved shortly thereafter to 1315 Suzanne Street. Danielle moved to 1325 Harvey Run Road approximately three months after her father died. The orphans' court assessed $18,797.64 in rental against the corporation for the period that it operated the bar and restaurant at 1395 Harvey Run Road following the decedent's death. It imposed a rental obligation upon Debra for her occupancy of 1325 Harvey Run Road in the amount of $4,075 and separately for her occupancy of 1315 Suzanne Street in the amount of $17,989.73. It awarded the estate rental of $29,340.00 against Danielle for the time frame that she resided at 1325 Harvey Run Road. These amounts reflect deductions for expenses paid by the parties.

■ ¶ 12 Appellants' position is that "Debra, Danielle, and Padezanin's Inn, Inc. are not required to pay rent prior to a demand by the Administrator." Appellants' brief at 15. In support of their position, Appellants rely upon 20 Pa.C.S. § 3311 (emphasis added):

(a) Personal representative.—A personal representative shall have the right to and shall take possession of, maintain and administer all the real and personal estate of the decedent, **except real estate occupied at the time of death by an heir or devisee with the consent of the decedent.** He shall collect the rents and income from each asset in his possession until it is sold or distributed, and, during the administration of the estate, shall have the right to maintain any action with respect to it and shall make all reasonable expenditures necessary to preserve it. The court may direct the personal representative to take possession of, administer and maintain real estate so occupied by an heir or a devisee if this is necessary to protect the rights of claimants or other parties. Nothing in this section shall affect the personal representative's power to sell real estate occupied by an heir or devisee.

¶ 13 Appellants first posit that as heirs of the estate, the personal representative was without authority to collect rent on real estate occupied by Debra, Danielle, and Padezanin Inn, Inc. Initially, we observe that Appellants' argument fails as to Padezanin Inn, Inc., which is neither an heir nor a devisee of the decedent. Padezanin Inn, Inc. has a distinct legal existence apart from its shareholders. *Lumax Industries, Inc. v. Aultman*, 543 Pa. 38, 42, 669 A.2d 893, 895 (1995) ("[T]he general rule is that a corporation shall be re-

garded as an independent entity even if its stock is owned entirely by one person."). It is not an intestate heir, and it was not a devisee under the invalid will. Thus, it is not entitled to the benefit of this *proviso*.

¶ 14 Furthermore, Danielle is not entitled to relief because she was not living on real estate owned by the decedent at the time of his death. Instead, she moved to 1325 Harvey Run Road approximately three months after her father died. Debra, however, is entitled to some relief on this claim. Debra occupied the top floor of 1325 Harvey Run Road on March 26, 2002, the date of the decedent's death, and was occupying that property with his consent. The 1949 comment to section 3311 issued by the joint state government committee clearly provides, consistently with the statutory language (emphasis added):

> With regard to personal estate, this section restates existing law. With regard to real estate, it is a distinct departure from existing Pennsylvania law and is based on the premise that the personal representative except as stated should have the duty as well as the right to control real estate until it is sold or distributed by decree or until control is relinquished to the heir or devisee because it is not needed for administration. The theory of the drafters has been that the legal and equitable title to real estate passes to heirs or devisees as heretofore, but that real estate should be administered as personal property, with a few minor exceptions when the nature of real estate requires a different treatment. During administration the personal representative will have the same powers over real estate as he has over personal property except as the Act makes express provisions to the contrary.

**It is not contemplated that rents shall be collected by the personal representative from real estate occupied by an heir or devisee unless needed for payment of claims.**

The case authority that we have uncovered confirms that as long as the estate is solvent, rental is not awarded to an estate from an heir or devisee occupying land of the decedent when the decedent died. *See Guerrina Estate*, 68 Pa. D. & C.2d 613 (Orphans'Ct.Phila.Co.1975); *Reese's Estate*, 19 Pa. D. & C.2d 299 (Orphans'Ct.Fayette Co.1960). In the present case, the orphans' court relied upon the second sentence of section 3311(a) and overlooked the statutory language, "except real estate occupied at the time of death by an heir or devisee with the consent of the decedent," when it concluded that the personal representative herein had the right to rental. It thus committed an error of law.

¶ 15 Appellee suggests that rental can be collected in the present case because it was needed to pay claims. He underscores the fact that the account filed by Mr. Sadecky indicates that the cash on hand is insufficient to satisfy present liabilities, which resulted from the inclusion of the real estate in the estate. We reject Appellee's suggestion because the estate is solvent in that the estate assets far exceed its current liabilities. In section 3311, the legislature has clearly indicated that a personal representative cannot charge rent to an heir or devisee occupying real estate with the permission of the decedent unless "needed" to satisfy obligations. Presently, this estate's assets far exceed its liabilities, and there is no "need" to charge rent to meet outstanding estate obligations.

¶ 16 Appellee refers us to *Malinowski Estate*, 16 Pa. D. & C.2d 695 (Orphans'Ct.Luzerne Co.1958), but that case merely reinforces our conclusion. There-

in, the estate of the decedent was worth about $1,700 while the decedent's debts were approximately $7,500. The court required the devisee of real estate to pay rental because the "personal estate" was "insufficient to pay decedent's obligations." *Id.* at 697. Herein, the "estate" is more than sufficient to satisfy the "obligations."

¶ 17 In the present case, since it did not acknowledge the first sentence of section 3311, the orphans' court did not render an appropriate award of rental. When the decedent died, Debra lived at 1325 Harvey Run Road. The orphans' court assessed $4,075 in rental against Debra for her occupancy of that property. Under the pertinent legal authority, we must vacate that award. However, Debra thereafter moved to 1315 Suzanne Street. Since she did not live at 1315 Suzanne Street "at the time of death … with the consent of the decedent," Debra cannot invoke the statute as to her occupancy of that property. Therefore, the award of rental against her for the period that she resided at 1315 Suzanne Street is upheld.

¶ 18 In challenging the award of rental, Danielle, Debra, and Padezanin Inn, Inc. all maintain that they cannot be charged any rental because there was no demand made upon them until the real estate was determined to be part of the estate. Appellants do not cite any legal authority in support of this position. Furthermore, the fundamental flaw with this argument is that the personal representative was without legal authority to request rental until the real estate was determined to be an estate asset. Thus, under the circumstances, they are entitled to no relief.

¶ 19 The next issue we address is whether the orphans' court erred in awarding Appellee attorney's fees in the amount of $1,500 for Appellee's efforts in obtaining compliance with a court order regarding transfer of a portion of the stock of Padezanin Inn, Inc. to Appellee. Our review of the record establishes that while acting as executrix under the provisions of the will, Debra expeditiously transferred the decedent's shares of the corporation equally into her name, Dorothy's name, and Danielle's name pursuant to the terms of that document. After the will was invalidated, Appellee was forced to expend time and effort to obtain compliance with a June 19, 2003 court order specifically requiring Debra, Danielle, and Dorothy to "take whatever action before the Pennsylvania Liquor Control Board or otherwise as is necessary to consummate the transfer of the stock to Daniel Padezanin, Jr." Order of Court, 6/19/03, at 1.

¶ 20 Despite the order's language requiring the affirmative action of the three sisters, the stock was not transferred until Appellee's attorney obtained advice from the LCB and after Appellee's attorney prepared a motion for contempt of the June 19, 2003 order and gave notice to Appellants that he planned to present it. The court awarded Appellee $1,500 in attorney's fees in connection with these efforts to secure compliance with the June 19, 2003 order. Under 42 Pa.C.S. § 2503(7), the section upon which the orphans' court relied, a participant is "entitled to a reasonable counsel fee as part of the taxable costs of the matter … as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter."

The trial court has great latitude and discretion with respect to an award of attorneys' fees pursuant to a statute. *Cummins v. Atlas R.R. Construction Co.,* 814 A.2d 742, 746 (Pa.Super.2002). In reviewing a trial court's award of attorneys' fees, our standard is abuse of discretion. *Lucchino v. Commonwealth,* 570 Pa. 277, 284, 286, 809 A.2d 264, 269–

70 (2002); *Miller v. Nelson*, 768 A.2d 858, 861 (Pa.Super.2001). If there is support in the record for the trial court's findings of fact that the conduct of the party was obdurate, vexatious or in bad faith, we will not disturb the trial court's decision.

*Scalia v. Erie Insurance Exchange*, 878 A.2d 114, 116 (Pa.Super.2005); *see also Kulp v. Hrivnak*, 765 A.2d 796, 799 (Pa.Super.2000), *questioned on other grounds*, *Brickman Group, Ltd. v. CGU Insurance Co.*, 829 A.2d 1160 (Pa.Super.2003). Obdurate is defined as unyielding or stubborn. *Scalia, supra.* In this case, the record supports the conclusion that Danielle, Debra, and Dorothy were being obdurate in fulfilling the affirmative obligations placed upon them by the order, and we find no error in the court's decision to award Appellee modest attorney's fees for his efforts to obtain compliance with the order. *Kulp, supra.*

 ¶ 21 Appellants also complain about the orphans' court's decision to award Appellee $17,764 in attorney's fees that he incurred to invalidate the deeds and obtain the inclusion of the real estate owned by the decedent in the estate. Appellee's endeavors in this respect increased the estate assets by $596,000.

> [T]he imposition of costs in an Orphans' Court proceeding is a matter left to the sound discretion of that court and will not be disturbed on appeal absent an abuse of discretion. *Istocin's Estate*, 126 Pa.Super. 158, 190 A. 382 (1937). An abuse of discretion occurs when the court misapplies existing law, makes a manifestly unreasonable judgment, or rules with partiality, prejudice or ill will. *M. London, Inc. v. Fedder[s] Corp.*, 306 Pa.Super. 103, 452 A.2d 236 (1982).

*In re Estate of Vaughn*, 315 Pa.Super. 354, 461 A.2d 1318, 1320 (1983).

 ¶ 22 Normally, the attorney's fees for a party who files exceptions to an account are not paid from the estate. *Id.* However, this general rule is subject to an exception "[w]here the estate is substantially benefitted by the efforts of an exceptant's counsel, which have resulted in an administrator being required to include in his inventory of the estate valuable assets previously not included." *Id.* In that situation, "it is within the discretion of the court to compensate the exceptant's counsel fees out of estate funds." *Id.* Indeed, in *Vaughn, supra*, we reversed the orphans' court's refusal to award counsel fees from the estate funds to an objectant's counsel because the efforts of that counsel substantially benefited the estate. Counsel had secured the inclusion of valuable assets into the estate's inventory and also obtained a surcharge against the personal representative for failing to properly invest estate funds. We noted that both these actions increased the value of the estate, and the attorney's fees incurred in that endeavor should have been paid by the estate. *See also In re Estate of Lux*, 480 Pa. 256, 389 A.2d 1053 (1978) (where attorney's efforts resulted in recovery of assets for estate, orphans' court properly ordered estate to pay his fees); *Estate of Bruner*, 456 Pa.Super. 705, 691 A.2d 530 (1997) (same).

¶ 23 In this case, *Vaughn* clearly applies. Appellee's counsel secured the addition of assets valued at $596,000 to the estate, and increased its value by another $5,000 in surcharges. In light of pertinent law, the orphans' court did not abuse its discretion in awarding $17,764 to the commendable efforts of Appellee's attorney in obtaining these increments to the estate assets. Furthermore, contrary to Appellants' assertion, the record substantiates that these fees were incurred in pursuit of the estate's interests.

¶ 24 In assailing the propriety of the orphans' court's decision to award Appellee attorney's fees for substantially increasing the value of the estate, Appellants rely upon *Faust's Estate*, 364 Pa. 529, 73 A.2d 369 (1950). That case has no application herein. It involved attorney's fees for the lawyer employed by the executor individually to successfully defend a will contest. The attorney in that case did not obtain inclusion in the estate of additional assets. Thus, Appellants' reliance upon it is misplaced.

¶ 25 The final issues that we address are the orphans' court's decision to deny Debra her claimed executrix fees in the amount of $5,096.46 for her services during her period of administration and surcharge her $3,635 for a) using the decedent's car for personal matters rather than promptly liquidating it and b) interest and penalty incurred due to her failure to file both a fiduciary income tax return and pay federal income taxes on the proceeds of an IRA that was distributed to the estate.

¶ 26 Pursuant to 20 Pa.C.S. § 3537, the orphans' court must "allow such compensation to the personal representative as shall in the circumstances be reasonable and just, and may calculate such compensation on a graduated percentage." However, "[t]he basis for determining whether compensation is reasonable [under section 3537] depends upon the value of the services actually rendered." *In re Estate of Geniviva*, 450 Pa.Super. 54, 675 A.2d 306, 312–13 (1996) (citing *In re Estate of Rees*, 425 Pa.Super. 490, 625 A.2d 1203 (1993)). In addition, personal representatives seeking compensation from estate assets bear "the burden of establishing facts which show the reasonableness of their fees and entitlement to the compensation claimed." *Id.* at 313 (quoting *Estate of Rees, supra* at 1206). Finally, "the determination of whether the executor's fees

are reasonable is left to the sound discretion of the Orphans' Court, and we will not disturb its determination absent a clear error or an abuse of discretion." *Id.*

¶ 27 Debra was appointed executrix on May 1, 2002, and was removed on June 19, 2003. She asserts that she is entitled to a fee of $5,096.46 for her "services as executrix between May 1, 2002[,] and November 1, 2002." Appellant's Reply brief at 12. Meanwhile, Debra wholly fails to identify the extent of the performance of her responsibilities as executrix and the amount of time she expended in doing so. Appellants' brief at 21–22. On the other hand, Appellee details deficiencies in Debra's performance of her duties as executrix: 1) she drove decedent's car rather than promptly selling it; 2) she failed to pay fiduciary income tax due on the proceeds of an IRA; and 3) she completed an inventory and inheritance return that improperly omitted from the estate assets real estate that had a value of approximately $600,000. Thus, we conclude that Debra has failed to carry her burden of proof by delineating the facts necessary to support the reasonableness of her claimed fee of $5,096.46.

¶ 28 Appellants' final contention is that Debra was improperly surcharged. The pertinent law follows:

> By statute, one aspect of the fiduciary duty of the executor is to "take possession of, maintain and administer all the real and personal estate of the decedent. . . ." 20 Pa.C.S.A. § 3311. In other words, the executor bears the responsibility to "preserve and protect the property for distribution to the proper persons within a reasonable time." *In re Estate of Campbell*, 692 A.2d 1098, 1101 (Pa.Super.1997). In the performance of his fiduciary duties, the executor must exercise the "judgment, skill, care

and diligence that a reasonable or prudent person would ordinarily exercise in the management of his or her own affairs." *Id.* at 1101–02.

When the executor of an estate fails to fulfill his fiduciary duty of care, the court may impose a surcharge against him. *In re Estate of Lux,* 480 Pa. 256, 264, 389 A.2d 1053, 1057 (1978) (citing *Estate of Stephenson,* 469 Pa. 128, 138, 364 A.2d 1301, 1306 (1976)). A surcharge is a penalty imposed to compensate the beneficiaries for loss of estate assets due to the fiduciary's failure to meet his duty of care; however, a surcharge cannot be imposed merely for an error in judgment. *Id.*; *In re Estate of Ellis,* 460 Pa. 281, 289, 333 A.2d 728, 732 (1975). Our Supreme Court has held that a standard of negligence is applied when evaluating whether an executor's management of an estate warrants a surcharge. *Estate of Stephenson,* 469 Pa. 128, 139, 364 A.2d 1301, 1306 (1976); *In re Bender's Estate,* 278 Pa. 199, 204, 122 A. 283, 284 (1923).

*In re Estate of Westin,* 874 A.2d 139, 144–45 (Pa.Super.2005).

¶ 29 In the present case, the decedent died owning a vehicle with a value of $4,285 at the date of death. Rather than fulfilling her responsibility to promptly sell the automobile in order to realize the appropriate amount of gain for the estate, Debra drove it and then abandoned it on the street for the successor personal representative to find and liquidate. The car eventually was sold in 2005 for $650. Debra's actions were in breach of her duties and occasioned a loss to the estate in the amount of $3,635; therefore, the surcharge was proper. *Geniviva, supra.*

■ ¶ 30 Debra operated as executrix from May 2002 until June 2003. During that period, she took possession of an IRA. The tax return for that asset, which is

income in respect of a decedent, was due in April 2003, while Debra still was acting as executrix. She failed to file the appropriate fiduciary return and neglected to pay taxes on the proceeds of the IRA when those taxes were due. This inaction caused the estate to incur penalties and interest. Consequently, a surcharge in the amount of penalties and interest occasioned by Debra's dereliction of her responsibility to timely pay taxes on the IRA was proper. *Geniviva, supra.*

■ ¶ 31 We do observe that Debra cannot be surcharged for any delay in filing the return and paying the taxes caused by Mr. Sadecky. Once he realized that the taxes had not been satisfied, it was incumbent upon Mr. Sadecky to expeditiously file and pay those amounts. It is unclear from the record when this occurred. The orphans' court also did not calculate the precise amount of the surcharge against Debra for penalties and interest. Thus, we remand for the orphans' court to make the appropriate findings regarding this surcharge item.

¶ 32 The assessment of rental against Debra A. Florida a/k/a Debra Padezanin in the amount of $4,075 is hereby vacated. The matter is remanded for determination of the precise amount of surcharge to be assessed against Debra for her failure to pay income taxes on the proceeds of the IRA. In all other respects, the May 9, 2006 order is affirmed.

¶ 33 Order vacated in part and affirmed in part. Case remanded. Jurisdiction relinquished.