J-A10034-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF RALPH R. UNGLO, DECEASED | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: GIA UNGLO | : | No. 891 WDA 2015 |

Appeal from the Decree Entered May 12, 2015
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): 5313 of 2009

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and PANELLA, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED OCTOBER 21, 2016**

Appellant, Gia Unglo ("Gia"), appeals from the decree of distribution entered in the Allegheny County Court of Common Pleas, which reduced her distributive share from the estate of Ralph R. Unglo ("Decedent"), by one-half the fair rental value of Decedent's residence, along with one-half of all real estate taxes and insurance paid by the estate, for a period of three years.  We affirm.

The relevant facts and protracted procedural history of this case are as follows.  Decedent died on August 21, 2009, survived by his two children, Gia and Ralph R. Unglo, II ("Ralph").  At the time of his death, Decedent owned two pieces of real estate: a rental property known as Aspen Lodge, and Decedent's residence.  Gia was living in Decedent's residence on the date of his death.  On August 26, 2009, Gia filed a petition for probate and grant of letters, claiming she was Decedent's sole heir.  Gia submitted to

probate a handwritten, non-witnessed and non-notarized document dated February 13, 2006, which Gia alleged was Decedent's Last Will and Testament. The purported will left all of Decedent's estate to Gia and left nothing to Ralph. The Department of Court Records granted Gia letters testamentary and letters of administration c.t.a. (*cum testamentio annexio*, meaning "with the will annexed"). That same day, Ralph filed a notice of appeal from probate of the will. On August 27, 2009, Ralph filed an emergency petition to freeze estate assets, challenging the validity of the proffered will and claiming Decedent's real estate was in danger of waste and mismanagement. Ralph alleged Gia had misappropriated rental payments from Decedent's tenants in the past and suggested that any rent collected from tenants of Aspen Lodge should be paid into an escrow account, pending a decision on the validity of the will. The court granted Ralph's emergency petition the next day.

On September 15, 2009, Ralph filed a formal petition for citation to show cause why his appeal from the order granting Gia letters testamentary and letters of administration should not be sustained. Ralph asserted claims for lack of testamentary capacity, undue influence, improper execution, and forgery. The court granted Ralph's petition the next day, directing Gia to show cause why the appeal should not be sustained. Gia subsequently filed an answer to Ralph's petition for citation.

On October 2, 2009, Ralph filed an emergency motion for sanctions,

claiming Gia was in violation of the court's August 28, 2009 order freezing estate assets. Specifically, Ralph alleged he saw an advertisement in the local newspaper on October 1, 2009, in which Gia was advertising a sale of estate assets to take place on October 4, 2009. The court granted Ralph's motion for sanctions on October 2, 2009, enjoining Gia from selling, removing, pawning, or consigning any of Decedent's personal property.

Due to Gia's refusal to comply with the court's August 28, 2009 and October 2, 2009 orders, the court revoked Gia's letters of administration on December 14, 2009. The court directed the Department of Court Records to appoint a successor administrator. Gia filed a notice of appeal on December 30, 2009, claiming the court erred by failing to hold an evidentiary hearing before removing her as administratrix of the estate. On May 13, 2010, Ralph filed a petition to appoint an interim personal representative while the appeal was pending. The court granted Ralph's request on September 14, 2010, and appointed Aligned Partners Trust Company ("Aligned Partners") as interim administrator of the estate. The court directed Aligned Partners to obtain an appraisal of Decedent's residence in preparation for sale of that property and to take control of Decedent's personal property. The Department of Court Records issued Aligned Partners letters of administration c.t.a. *pro tem* on September 16, 2010. On December 6, 2010, Aligned Partners asked the court to lift its prior order freezing estate assets, which the court granted on December 22, 2010.

On October 25, 2010, this Court affirmed the order revoking Gia's letters of administration. *See In re: Estate of Unglo*, 15 A.3d 541 (Pa.Super. 2010). On the merits, this Court explained that prior to Gia's removal, the Orphans' Court had addressed two emergency petitions brought to protect estate assets from imminent disbursement by Gia. This Court highlighted the Orphans' Court statement that a conciliation conference with the parties held on December 8, 2009, revealed that Gia had no intention whatsoever of preserving the estate's assets. Thus, this Court held the Orphans' Court reasonably concluded Gia's removal was necessary to protect the estate. *See Estate of Unglo, supra*.

The Orphans' Court scheduled trial on the will contest for August 29, 2011. Following the filing of pre-trial statements, Gia filed *omnibus* motions *in limine* to disqualify Ralph's counsel, to preclude testimony from Ralph's expert witness (Dr. Jeffrey Wilson), and to continue the trial. On the date scheduled for trial, the court heard argument from Gia on her motions *in limine* but did not issue a decision. Instead, the court directed Gia to proceed with her case. During the lunch recess, Gia filed a premature notice of appeal (before the court had even ruled on Gia's motions). When the court returned to session after the lunch recess, Ralph offered his expert as a witness. Gia informed the court about the appeal she had filed over the lunch break and sought to preclude Ralph's expert from testifying due to the pending appeal. After some discussion, the court denied Gia's motions *in*

*limine* and heard testimony from Dr. Wilson. Following testimony from Ralph's expert, the court closed the record due to the pending appeal. On September 28, 2011, Gia filed a second notice of appeal from the order denying her motions *in limine*. This Court subsequently consolidated the appeals. On August 2, 2012, this Court quashed Gia's appeals as interlocutory. *See In re: Estate of Unglo*, 60 A.3d 556 (Pa.Super. 2012) ("*Estate of Unglo II*") (holding order denying Gia's motions *in limine* was not immediately appealable order).

Meanwhile, Aligned Partners filed a petition on June 10, 2011, to sell the Aspen Lodge property because the estate lacked sufficient liquid assets. The court granted the petition and Aligned Partners subsequently sold that property. On August 3, 2012, Aligned Partners filed a First and Final Account and Petition for Distribution. During administration of the estate, Aligned Partners learned the roof of Decedent's residence (where Gia still lived) had deteriorated and needed repair. Gia refused to let Aligned Partners access Decedent's residence to make the needed repairs. Consequently, the court entered an order on September 26, 2012, permitting Aligned Partners to hire construction personnel to complete the necessary repairs to the residence. The court specifically ordered Gia to give any and all access necessary for inspection and repair of the roof and directed Gia to cooperate fully and assist in facilitation of the repairs. On October 11, 2012, Ralph filed objections to the First and Final Account and

Petition for Distribution. On November 5, 2012, the court ordered that its September 26, 2012 order regarding repairs to the roof remain in full force and effect. The court further directed Aligned Partners to secure the Sherriff's department, if necessary, to gain access to Decedent's residence to make the necessary repairs to the roof.

Trial on the validity of the will continued on December 19, 2012. Gia's counsel had been placed on administrative suspension, so Gia appeared *pro se*. At the beginning of trial that day, Gia sought a continuance to secure replacement counsel.[1] The court deferred ruling on the continuance motion and took testimony from Ralph's witnesses. At the conclusion of testimony/evidence and over Ralph's objections, the court kept the record open for two weeks, in an abundance of caution and in all fairness to Gia, so Gia could obtain replacement counsel. Gia retained replacement counsel, and trial on the will contest resumed on March 21-22, 2013.

On April 26, 2013, the court issued the following findings of fact and conclusions of law regarding the will contest:

[Findings of Fact:]

(1)     Decedent died on August 21, 2009.

(2)     In February 2006 when Decedent handwrote the document that was introduced as Exhibit 4 and probated as his Will, he was suffering from several debilitating conditions, including diabetes, blindness in one eye, poor

---

[1] The Disciplinary Board placed Gia's counsel on administrative suspension effective October 19, 2012. Gia claimed she did not learn of the suspension until December 7, 2012.

vision in the other eye, worsening kidney failure, imbalances in his electrolytes and fluids, dehydration, depression, and memory lapses.

(3)     Decedent's health conditions left him seriously impaired.

(4)     From 2004 through the date when Decedent handwrote Exhibit 4, and for some period of time thereafter, Gia resided with Decedent in Decedent's residence.

(5)     During this time, Decedent was dependent upon Gia for most of his daily needs, including assistance with medication, transportation to medical and other appointments, shopping, and management of his financial affairs. Gia's testimony to the contrary is incredible.

(6)     Also during this time, Gia was aware of Decedent's dependence on her and she intentionally and purposefully restricted [Ralph's] access to Decedent. Again, Gia's testimony to the contrary, including her testimony that neither she nor Decedent knew [Ralph's] whereabouts, is incredible.

(7)     Decedent's health improved and stabilized once he was receiving regular kidney dialysis treatments.

(8)     When Decedent met with Attorney Carol Sikov Gross in late 2008 and again in 2009, he did not know that he had previously handwritten a Will. Pursuant to these meetings with counsel, Decedent executed a Power of Attorney [appointing Ralph as his Power of Attorney]. Although a Will was prepared by counsel, Decedent died prior to executing it.[2]

*     *     *

[Conclusions of Law:]

In the case at bar, for the following reasons, the [c]ourt

_____

[2] Ralph and Attorney Sikov Gross testified that Decedent intended to leave 40% of his estate to Gia in trust, and 60% of his estate to Ralph.

finds that Decedent did not have testamentary capacity at the time he prepared and signed the handwritten Will dated February 13, 2006, as he was under the undue influence of Gia and he was suffering from a weakened intellect. First, the Will contains reference to accounts that Decedent had not owned in several years, which indicates that he did not know the extent of his estate. Second, the document was prepared late at night when Decedent was likely to have been in a fading and debilitated condition. Third, Gia was clearly in a confidential relationship with Decedent. She cared for him on a daily basis. Decedent was unable to live alone and care for himself. Essentially, he was entirely dependent upon Gia at the time he wrote the document and they were not on an equal footing. Fourth, not only does the document provide for Gia to receive a "substantial portion" of Decedent's estate, it provides that she will receive his entire estate. Fifth, Decedent had a weakened intellect due to numerous serious medical conditions from which he suffered in early 2006, which resulted in hospitalizations shortly before and after he handwrote the document. Sixth, it is apparent that Decedent had a close relationship with his son, [Ralph], and would not have wanted to exclude him from receiving a portion of his estate.

(Orphans' Court Opinion, filed April 26, 2013, at 4-7; R.R. at 391-394).

Thus, the court sustained Ralph's appeal from the admission of the purported will to probate and directed the matter to proceed as if Decedent had died intestate. The court acknowledged that Ralph had filed objections to Aligned Partners' First and Final Account and Petition for Distribution, so the court scheduled a status conference concerning the objections.

Ralph filed additional objections to the First and Final Account and Petition for Distribution on May 10, 2013. Gia also filed objections, which she later withdrew. On January 21, 2015, the parties appeared for a hearing on Ralph's objections. At that time, all objections had been resolved

amicably, with the exception of Ralph's claim that Gia's distributive share of Decedent's estate should be reduced by one-half the fair rental value of Decedent's residence for the time Gia resided in Decedent's residence beyond six months following Decedent's death, along with one-half of all real estate taxes and insurance paid by the estate during that time.[3]

John Shaffer, President of Aligned Partners, testified at the hearing as follows. Mr. Shaffer testified that the court appointed Aligned Partners as successor administrator of the estate in September 2010. At that time, the estate owned two pieces of real estate—Aspen Lodge and Decedent's residence. The estate did not have sufficient liquid assets to pay its expenses, so Aligned Partners filed a petition for leave to sell Aspen Lodge, which the court granted. Mr. Shaffer explained that Gia did not permit Aligned Partners to conduct repairs necessary for Decedent's residence, which forced Aligned Partners to obtain a court order. After the court entered an order on September 26, 2012, directing Gia to let Aligned Partners access the property, Gia still refused access. As a result, Aligned Partners had to seek another court order. Mr. Shaffer explained the estate paid the taxes and insurance for Decedent's residence while Gia resided there; Gia paid the utilities. Mr. Shaffer said he sent Gia a letter on November 29, 2013, asking her to vacate Decedent's residence by

---

[3] Gia lived in Decedent's residence for approximately four and one-half years following Decedent's death. Ralph sought to reduce Gia's distributive share of the estate by one-half the fair rental value, taxes, and insurance, for four years.

December 31, 2013. Mr. Shaffer explained he did not ask Gia to vacate Decedent's residence before that time due to the ongoing will contest. Mr. Shaffer testified Gia did not vacate Decedent's residence until late February 2014.[4] Mr. Shaffer said Decedent's residence sold on August 8, 2014, about two months after Aligned Partners put the property on the market. Mr. Shaffer explained Aligned Partners did not list the property for sale immediately after Gia vacated because Aligned Partners still had to clean and prepare the property for sale. Mr. Shaffer testified Decedent's residence was appraised at $360,000.00, but it was sold for only $317,000.00.

Gia testified she did not pay rent while she lived in Decedent's residence because no one had asked her to do so. Gia explained if she had been asked to pay rent, she would have paid rent or found somewhere else to live. Gia said she did not permit Aligned Partners access to Decedent's residence to make repairs because she wanted to make the repairs herself. Gia testified that she ultimately prevailed in her request and assumed responsibility for making the necessary repairs to Decedent's residence.

Ralph testified that Gia was living in Decedent's residence without Decedent's consent at the time of Decedent's death. Ralph explained Decedent had taken numerous actions to have Gia removed from his home. Ralph said Decedent called the police on three separate occasions—July 26, 2008, November 21, 2008, and January 26, 2009—asking police to remove

---

[4] Gia vacated Decedent's residence on February 28, 2014.

Gia from his residence. Ralph testified he had many discussions with Decedent about his desire for Gia to move out of his home. Ralph said the police told Decedent he needed to file eviction papers with the court to remove Gia from his home. Ralph stated Decedent filed eviction papers. Ralph testified that Decedent contacted the Department of Aging to assist in having Gia removed from his residence.

By order entered February 25, 2015, the court reduced Gia's distributive share of Decedent's estate by $61,900.00. Although Ralph had requested a reduction of Gia's distributive share for a four-year period, the court reduced Gia's distributive share for only a three-year period. On April 1, 2015, the court signed Aligned Partners' final decree of distribution, in conformity with the court's February 25, 2015 order. The decree was entered on the docket on May 12, 2015. Gia timely filed a notice of appeal on June 8, 2015. The court did not order, and Gia did not file, a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Gia raises the following issue on appeal:

> WHETHER AN HEIR WHO RESIDES IN A DECEDENT'S RESIDENCE AT THE TIME OF THE DECEDENT'S DEATH, AND CONTINUES TO LIVE IN THE RESIDENCE FOR SEVERAL YEARS FOLLOWING THE DECEDENT'S DEATH, HAS AN OBLIGATION TO PAY RENT, REAL ESTATE TAXES AND INSURANCE TO THE DECEDENT'S ESTATE WHEN THE DECEDENT ALLOWED THE HEIR TO RESIDE IN HIS RESIDENCE AT THE TIME OF HIS DEATH AND THE ESTATE WAS SOLVENT.

(Gia's Brief at 4).

- 11 -

Our standard and scope of review are as follows:

> When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.
>
> However, we are not constrained to give the same deference to any resulting legal conclusions.
>
> The Orphans' Court decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law.

*In re Estate of Whitley*, 50 A.3d 203, 206-07 (Pa.Super. 2012) (internal citations and quotation marks omitted).

Gia argues that, under the Decedents, Estates and Fiduciaries Code ("Code"), an administrator of the estate may not collect rent from an heir who was residing at the decedent's residence, with the decedent's consent, at the time of the decedent's death. Gia highlights the comment to the relevant provision of the Code, which explains that a personal representative shall not collect rent from an heir or devisee living in the decedent's property unless needed for payment of claims. Gia avers she resided with Decedent at his residence since 2005 or 2006, she used Decedent's address on her driver's license and voter's registration card, and she received her mail at Decedent's address. Gia maintains she continued to reside in Decedent's home during pendency of the will contest and all related matters until

- 12 -

February 2014. Based on the length of time she resided in Decedent's home, and because Decedent did not formally evict her, Gia contends she had Decedent's consent to live there. Gia asserts the administrator had no need to collect rent from Gia to pay off estate expenses because the estate was solvent. Gia insists she vacated the property shortly after Aligned Partners asked her to leave. Gia suggests her occupancy of Decedent's residence did not delay administration of the estate. Gia complains the court misinterpreted the various relevant provisions of the Code against her position. Gia submits she is not obligated to pay half of the fair rental value of Decedent's residence, or half of the taxes or insurance, for any time she resided in Decedent's home.

Even if the court correctly reduced her distributive share of the estate by half of the fair rental value of the property, Gia challenges the court's reduction of her distributive share of the estate by half of the taxes and insurance. Gia emphasizes that the estate paid the taxes and insurance on the property as an expense of maintaining the real estate, so she and Ralph effectively bore half of the taxes and insurance already. Gia argues that reducing her distributive share of the estate by half the taxes and insurance effectually requires Gia to double pay. Gia complains the court's calculation directly and unjustly benefits Ralph because it requires her to pay 100% of the taxes and insurance while Ralph pays nothing. Gia insists the taxes and insurance for Decedent's residence are the estate's responsibility, not the

responsibility of the individual occupying and/or renting the property. Gia concludes the court's order reducing her distributive share of Decedent's estate was erroneous, and this Court must reverse. We disagree.

The Code provides, in pertinent part, as follows:

> **§ 3311. Possession of real and personal estate; exception**
>
> **(a) Personal representative.**—A personal representative shall have the right to and shall take possession of, maintain and administer all the real and personal estate of the decedent, except real estate occupied at the time of death by an heir or devisee with the consent of the decedent. He shall collect the rents and income from each asset in his possession until it is sold or distributed, and, during the administration of the estate, shall have the right to maintain any action with respect to it and shall make all reasonable expenditures necessary to preserve it. The court may direct the personal representative to take possession of, administer and maintain real estate so occupied by an heir or a devisee if this is necessary to protect the rights of claimants or other parties. Nothing in this section shall affect the personal representative's power to sell real estate occupied by an heir or devisee.

20 Pa.C.S.A. § 3311(a). "It is not contemplated that rents shall be collected by the personal representative from real estate occupied by an heir or devisee unless needed for payment of claims." 20 Pa.C.S.A. § 3311, *Comment*. ***See also In re Padezanin***, 937 A.2d 475 (Pa.Super. 2007) (vacating in part award of rental to estate assessed against decedent's daughter Debra for time she resided in decedent's property following his death; Debra was residing in decedent's property at time of his death with decedent's consent and moved shortly thereafter; as well, estate's assets far

exceed its liabilities; thus, court erred by assessing Debra rental in amount of $4,075.00).

In the case of **In re Estate of Bouks**, 964 A.2d 4 (Pa.Super. 2008), *appeal denied*, 606 Pa. 643, 992 A.2d 885 (2010), the decedent died testate, survived by her children who were co-executors and co-beneficiaries under the decedent's will. The appellant (the decedent's son) assumed responsibility for administering the estate. At the time of the decedent's death, the appellant was residing with the decedent in her home. After the decedent's death, the appellant indicated he wanted to purchase the decedent's home for the value used for inheritance tax purposes, which was approximately sixty percent below fair market value of the home. After the appellant's sister rejected the offer, the appellant filed a petition seeking to purchase the home for the inheritance tax assessed value. The court denied the appellant's petition and ordered him to file an accounting and place the home on the market for sale. The appellant refused to comply, and his sister filed a contempt petition. Faced with the contempt petition, the appellant finally purchased the home for an appropriate amount. After the appellant filed the account as executor, his sister filed objections arguing her brother should have to pay rent for the period that he occupied the decedent's residence rent-free before purchasing the property. The court agreed and awarded rental against the appellant for the period commencing six months after the decedent's death.

On appeal, this Court explained:

> We are in accord with the [O]rphans' [C]ourt's application of 20 Pa.C.S. § 3311 to the facts in question. ***Padezanin*** is distinguishable. In that case, we vacated an award of rental in favor of an estate and against an heir who was residing on real estate owned by the decedent with [the] decedent's permission when he died. However, the heir had vacated the real estate shortly after the estate was opened and rental had been awarded for a matter of a few months. As noted, the heir left the real estate in a timely manner and did not engage in conduct preventing the real estate from being properly administered. Nothing in that decision should be construed so as to permit the beneficiary of an estate to reside on the estate's real property rent-free for an unlimited period of time.
>
> In the present case, [the a]ppellant was directly responsible for the delay in his purchase of the estate's real property. He attempted to purchase the residence for [approximately] $70,000 when the appraisals indicated that it was worth between $110,000 and $140,000. [The a]ppellant then defied a directive from the [O]rphans' [C]ourt that he list the property for sale. It was only when [the a]ppellant was faced with a contempt petition that the sale was finally consummated. Since [the a]ppellant's dilatory behavior prevented the co-beneficiary of this estate from receiving her one-half interest in the real estate for four years, the [O]rphans' [C]ourt properly awarded rental.
>
> Thus, we affirm the [O]rphans' [C]ourt's conclusion that when the occupancy of the decedent's real estate by an estate's beneficiary is unnecessarily prolonged due solely to the improper behavior of the beneficiary occupying the real estate, 20 Pa.C.S. § 3311 will not be construed to prevent an award of rental following a reasonable period. A contrary construction of that enactment would encourage beneficiaries to delay settling an estate in order to take advantage of dwelling on estate property rent-free. In light of legal precepts that require the prudent administration of an estate and timely distribution of estate assets, the legislature did not intend [S]ection 3311 to prevent an award of rental under the circumstances

- 16 -

present herein.

***Estate of Bouks, supra*** at 6-7.

Instantly, the court explained its decision to reduce Gia's distributive share of Decedent's estate, as follows:

> The…Code, at 20 Pa.C.S.A. § 3311(a), provides that the sole beneficiary of an estate does not have an obligation to pay rent on real property that he/she occupies at the time of the decedent's death, as long as he/she did [so] with the decedent's permission and there are sufficient assets in the estate to pay all of the estate's obligations. In this case, Gia…was not the sole beneficiary; rather, she and her brother, Ralph…were equal beneficiaries of this intestate estate. Moreover, while there were sufficient assets to…pay the estate's obligations, **there is some question as to whether [Gia] resided in the residence with the consent and permission of Decedent.**
>
> That being said, in ***Estate of Bouks***[***, supra***], the Superior Court held that even if a beneficiary is entitled to occupy a property without paying rent, such should only be for a period of six months. Here, [Gia] lived in [Decedent's] property for almost four and one-half years after her [f]ather's death. **During this time, she probated a Will, which was found to be invalid, she denied her brother and other persons access to the residence, and she, in several other respects, hindered the administration of the estate.**
>
> [Ralph], who is the other beneficiary of the estate, has requested that the [c]ourt find that [Gia] is responsible for one-half of the fair rental value (which was agreed to be $2,350/month), along with one-half of the real estate taxes and one-half of the homeowner's insurance for at least a period of forty-eight (48) months. The [c]ourt believes that [Gia] should be responsible for rent, taxes, and insurance for some period of time, as she should not be entitled to live for free in a property that is owned one-half by her brother and that could have been rented and generating income for the estate. However, under the

circumstances of this case, the requested period of time is excessive. As such, the [c]ourt finds that [Gia] is responsible for one-half of the fair rental value and one-half of the real estate taxes and insurance for a period of thirty-six (36) months, which totals $61,900.[1]

> [1] Calculated as follows:[5]
> ($2,350 ÷ 2) x 36 months = $42,300 (rent)
> ($9,467.78 + $8,716.39 + $12,807.71) ÷ 2 = $15,495.94 (real estate taxes)
> ($2,738 x 3) ÷ 2 = $4,107 (insurance)

Based upon the foregoing, the [c]ourt enters the following:

**ORDER OF COURT**

AND NOW, to wit, this 24 day of February, 2015, it is hereby ORDERED that the Administrator CTA shall reduce the distributive share due to Gia…by $61,900.

(Opinion and Order, filed February 25, 2015, at 2-3; R.R. at 507-508) (emphasis added). We see no reason to disrupt the court's decision under these facts. *See Estate of Whitley, supra*.

Initially, the record fails to demonstrate Gia was residing in Decedent's residence, with his consent, at the time of his death. Ralph testified and presented evidence at the January 21, 2015 hearing that Decedent took numerous actions before his death to evict Gia from his property, including contacting the police on at least three occasions, contacting the Department of Aging, and filing eviction papers. Although Gia maintained that she resided in Decedent's residence with his consent, the court did not find her testimony wholly credible, as it concluded there is "some question" as to

---

[5] Gia does not directly dispute the calculations of fair rental value, taxes or insurance.

whether Gia resided in Decedent's residence with his consent. The record supports the court's credibility determination. *See id.*

Additionally, Gia took numerous actions throughout this litigation, which prolonged and unnecessarily delayed the timely administration of Decedent's estate. Significantly, Gia proffered a holographic will to probate several days after Decedent's death, represented herself as Decedent's sole heir, and obtained letters of administration on false pretenses. Ralph challenged the will. During the pendency of the will contest, Gia ignored multiple court orders requiring her to preserve estate assets. After Gia disobeyed the court's orders of August 28, 2009 and October 2, 2009, the court revoked Gia's letters of administration on December 14, 2009. Gia filed a notice of appeal on December 30, 2009, claiming the court erred by failing to hold an evidentiary hearing before removing her as administratrix of the estate. This Court affirmed the removal order on October 25, 2010. Gia's appeal delayed the will contest, which continued on August 29, 2011. Prior to trial scheduled for that date, Gia filed *omnibus* motions *in limine* to disqualify Ralph's counsel, to preclude testimony from Ralph's expert witness (Dr. Jeffrey Wilson), and to continue the trial. When the court indicated its intent to proceed with trial and hear testimony from Ralph's expert witness, Gia filed a premature notice of appeal during the court's lunch recess in an effort to preclude the court from taking testimony from Ralph's expert. The court ultimately denied Gia's motions *in limine* and heard testimony from

Ralph's expert, but the court then closed the record due to the pending appeal. Gia filed a second appeal, and this Court consolidated the cases. Almost a year later, on August 2, 2012, this Court quashed Gia's appeals as interlocutory.

Meanwhile, Gia refused to let Aligned Partners have access to Decedent's residence to make needed repairs. Gia's actions resulted in two court orders compelling Gia to cooperate and granting Aligned Partners permission to seek assistance from the Sheriff's department if necessary to complete the repairs. Gia disobeyed the court's orders and completed the repairs herself.

After trial on the will contest concluded, the court held on April 26, 2013, that Gia's proffered holographic will was invalid and the case shall proceed as if Decedent had died intestate. At that point, Gia had been living in Decedent's residence rent-free for more than three and one-half years. After the will contest was finally resolved, Aligned Partners sent Gia a letter on November 29, 2013, asking her to vacate Decedent's residence by December 31, 2013. Gia requested additional time to vacate due to the upcoming holidays and did not vacate Decedent's residence until February 28, 2014. Aligned Partners sold Decedent's residence on August 8, 2014, about two months after listing the property for sale, for $317,000.00, which was below its appraised value of $360,000.00.

The record supports the court's analysis that during the four and one-

half years Gia resided in Decedent's home rent-free following his death, she probated a will found to be invalid, she denied her brother and other persons access to the residence, and she hindered the administration of the estate. Consequently, Gia was not entitled to the exception delineated under Section 3311(a), and the court properly reduced Gia's distributive share of Decedent's estate by half the fair rental value of the property, for three of the four and one-half years at issue. *See* 20 Pa.C.S.A. § 3311(a); *Estate of Bouks, supra*. Gia's reliance on *In re Padezanin* is misplaced because the decedent's daughter (Debra) in that case was residing in the decedent's property **with the decedent's consent**, she vacated the real estate in a timely manner, and she did not engage in obstructive conduct to the timely administration of the estate. *See In re Padezanin, supra*. *See also Estate of Bouks, supra*.

Further, the record supports the court's decision to reduce Gia's distributive share of Decedent's estate by half of the taxes and insurance for three of the four and one-half years at issue. Gia's actions delayed the sale of Decedent's residence for many years, causing the estate to pay additional taxes and insurance, which accrued solely to Gia's benefit at the expense of the estate. Notably, the court rejected Ralph's request to reduce Gia's distributive share by half of the fair rental value, taxes, and insurance for the full four years, consistent with the six-month grace period described in *Estate of Bouks*. Instead, the court assessed Gia half of the fair rental

value, taxes, and insurance for only three years. Given the circumstances of this case, we see no reason to disrupt the court's decision to reduce Gia's distributive share of Decedent's estate on the grounds asserted. ***See Estate of Whitley, supra***. Accordingly, we affirm.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/21/2016