J-S50014-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| IN RE: ESTATE OF PENELOPE ANN PREBISH PAULA J. OPALKA AND JAMES W. OPALKA, EXECUTORS OF THE ESTATE OF PENELOPE ANN PREBISH A/K/A PENNY A. PREBISH | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| MONICA D. PREBISH, ADMINISTRATOR OF THE ESTATE OF DONALD F. PREBISH A/K/A DONALD FRANCIS PREBISH, DECEASED, MONICA D. PREBISH, INDIVIDUALLY, MICHELLE D. PREBISH AND MARK D. PREBISH | |
| APPEAL OF: MONICA D. PREBISH | No. 1837 WDA 2017 |

Appeal from the Order Entered November 1, 2017
In the Court of Common Pleas of Cambria County Orphans' Court at
No(s): 11-08-00975

BEFORE: BOWES, J., OTT, J., and KUNSELMAN, J.

MEMORANDUM BY BOWES, J.:                    FILED DECEMBER 27, 2018

Monica D. Prebish ("Monica") appeals from the order that granted the petition for exclusive possession of real property ("the property")[1] filed by the executors of the estate of Penelope A. Prebish ("Penelope"). We affirm.

The orphans' court offered the following summary of the history of the parties involved in this appeal.

Donald F. Prebish ("Donald") and Penelope . . . were married [and had three adult children: Monica, Mark Prebish ("Mark"), and Michelle Prebish ("Michelle"). Divorce proceedings had been

_____

[1] The property, a house in Ebensburg, Pennsylvania, appears to have been the Prebishes' primary residence.

initiated] when Donald died on August 22, 2008. Although an equitable distribution order had been entered, no divorce decree was ever finalized prior to Donald's death. The order entered in the divorce case awarded the property to Donald. Donald's will dated June 29, 1979 devised all of this property to Penelope. On December 16, 2015[,] Penelope died.

Monica was named the administratrix of Donald's estate. The disputes between the heirs in this matter began when Mark . . . filed a petition to remove Monica as the administratrix of Donald's estate. In response, Monica indicated that while she is residing in the property "she has been making improvements and preparing the same for sale." After hearing from all parties, th[e orphans'] court entered an order on June 21, 2016, giving Monica 120 days to complete repairs on the residence in question and list it for sale and deferred ruling on the petition to remove her as administrator of Donald's estate. The purpose of this order was to afford Monica an opportunity to carry out her duties. Thereafter, the executors of Penelope's estate, her sister and brother-in-law, Paula Opalka and James Opalka ("Opalkas") filed an action in declaratory judgment seeking to have the court declare the property to be part of Penelope's estate. After extensive briefing and argument, th[e orphans'] court entered an order of January 20, 2017 finding that Penelope's estate was the correct devisee of the property. No appeal from this order was taken.

Throughout the beginning of 2017, it appears as though the parties attempted to work out an arrangement whereby the property could be sold. The Opalkas filed a petition for exclusive possession relative to the property on July 25, 2017. The court held a status conference relative to this petition on September 21, 2017. A hearing was held on October 2, 2017. At its conclusion, the parties indicated that they may be able to reach a compromise; therefore, the court did not render a decision. On October 18, 2017, the court afforded the parties until October 31, 2017 to submit a written agreement of compromise. On October 30, 2017, the Opalkas submitted a written agreement of compromise. On that same date, Monica submitted a response to the same indicating that she did not agree to the same. In response, the Opalkas filed a pleading that highlighted the inconsistencies present in Monica's response. As a result of the parties' inability to reach a settlement, the court entered an order on November 1, 2017[, requiring Monica to vacate the property

within sixty days; to pay $9,000 to Penelope's estate to cover rent of the property at $750 per month from January 2017 through December 2017; and to pay $3,150 in attorney fees to the estate.]

Orphans' Court Opinion, 1/8/18, at 2-3 (footnote, citation, and unnecessary capitalization omitted).

Monica filed a timely notice of appeal, and both Monica and the orphans' court complied with Pa.R.A.P. 1925. Monica presents the following questions for this Court's review, which we have reordered for ease of disposition:

1. Whether the [orphans'] court erred in directing [Monica] to vacate her residence, which is estate property, but in which she lived at the time of [Penelope's] death with [Penelope's] permission?

2. Whether the [orphans'] court erred in directing [Monica] to pay to [Penelope's] estate rent for a time period in which she resided in the residence of [Penelope]?

3. Whether the [orphans'] court erred in directing [Monica] to pay attorney's fees to [Penelope's] estate for filing and presentation of a petition for exclusive possession?

Appellant's brief at 4 (unnecessary capitalization omitted).

We begin with our standard of review.

When reviewing a decree entered by the orphans' court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the orphans' court sits as the fact-finder, it determines the credibility of the witnesses, and on review, we will not reverse the orphans' court's credibility determinations absent an abuse of discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. The orphans' court decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law.

In re Cohen, 188 A.3d 1208, 1210-11 (Pa.Super. 2018) (cleaned up).

We first consider Monica's claim that the orphans' court erred in directing her to vacate the property. Monica argues that the ruling is contrary to 20 Pa.C.S. § 3311, which provides as follows in relevant part.

> A personal representative shall have the right to and shall take possession of, maintain and administer all the real and personal estate of the decedent, except real estate occupied at the time of death by an heir or devisee with the consent of the decedent. He shall collect the rents and income from each asset in his possession until it is sold or distributed, and, during the administration of the estate, shall have the right to maintain any action with respect to it and shall make all reasonable expenditures necessary to preserve it. The court may direct the personal representative to take possession of, administer and maintain real estate so occupied by an heir or a devisee if this is necessary to protect the rights of claimants or other parties. Nothing in this section shall affect the personal representative's power to sell real estate occupied by an heir or devisee.

20 Pa.C.S. § 3311.

Monica focuses upon the portion of the first sentence that excepts real estate occupied by an heir at the time of the death with the decedent's consent from a personal representative's right to take possession. Monica's brief at 143. While acknowledging the later provision that the court may direct the personal representative to take possession if such is necessary to protect the rights of other parties, Monica contends that the record does not show that removing her was required for the Opalkas to administer the estate and sell the property. Id. at 14-15.

The orphans' court addressed Monica's claim as follows.

> At the hearing on October 2, 2017[,] we did not find the testimony of Monica to be credible as to the reasons given for the delay in preparing the property for sale. Rather, they are the

same reasons she gave the court when her brother Mark was seeking to remove her as executor of her father's estate in the summer of 2016. We are persuaded that the Opalkas will continue to be thwarted in their efforts to administer Penelope's estate unless Monica is removed from the property. Based on all of the testimony and the court's familiarity with the history of this family, it appears as if Monica believes she is entitled to live in the property to the exclusion of the other heirs Mark and Michelle. While it appears as if Michelle is willing to allow her to continue living there indefinitely, Michelle's wishes are not paramount for the Opalkas but rather Penelope's wishes as reflected in her last will and testament are the polestar that must be followed. In giving the parties time to work out a solution and in giving Monica time to make other arrangements, the court attempted to balance Monica's living situation with the necessity faced by the Opalkas to wrap up the estate. The court finds that we have given Monica as much time as is possible to make arrangements for the sale of the property and the time has come to allow someone else to make these arrangements.

Orphans' Court Opinion, 1/8/18, at 4 (unnecessary capitalization omitted).

The orphans' court determination is supported by the record. In June 2016, Monica testified that she was willing to make repairs to maximize the value of the property and to list it for sale. N.T. Rule to Show Cause, 6/20/16, at 18.[2] Monica spoke of removing rugs and commencing painting by the end of August 2016, and enlisting friends to install flooring. Id. at 19-20. Monica also indicated that some windows and gutters needed to be replaced. Id. at 20. She represented that she was willing to use her own money to fix up the

_____

[2] The show-cause hearing was conducted in connection with Donald's estate at docket number 11-08-0975. The transcript, as well as the rest of the record from that case, is included in the certified record before us in this appeal.

house, and estimated that it would take "about a year and a half" to complete all of the necessary repairs. Id. at 21, 23.

About a year and a half after that hearing, the orphans' court conducted the hearing on the Opalkas' petition for possession. At that time, the house was still "full of stuff" with just "a path to get through." N.T. Exclusive Possession Hearing, 10/2/17, at 8, 9. All of the carpeting still needed to be replaced, there was drywall that was unfinished, and pet odors that would impair sale of the property. Id. at 9. Photographs taken by Monica showed extensive areas of cracked and crumbled plaster, some leaving significant holes of exposed lath; wallpaper that was only partially removed; and outdoor areas in disrepair. Id. at Exhibits 1A-1Y.

The Opalkas made attempts to get Monica, Michelle, and Mark together to determine what to do with the copious personal property cluttering the residence. Id. at 34-25. The Opalkas sought to gain entrance to the property, arranging for a constable to be there for security purposes, but Monica called the police and her attorney rather than allow access. Id. at 36, 60. Indeed, Monica had not really spoken to the Opalkas since Penelope died and Ms. Opalka "was told to get out and stay out." Id. at 27. Further, Monica, through counsel, indicated to the Opalkas that she intended to remain in the property "until a final determination is made as to what will take place with the residence" and that she would not leave "unless a proper action in eviction

and/or an action in ejectment is carried through." Petition for Exclusive Possession, 7/25/17, at Exhibit B.

Upon this record, the orphans' court acted within its discretion in determining that removing Monica from the property was necessary to protect Mark's rights. Its finding that Monica would otherwise continue to obstruct the Opalkas' ability to sell the property for the benefit of all of Penelope's heirs was more than justified by the evidence.

We next review Monica's contention that the orphans' court committed an error of law in requiring her to pay rent. The court offered the following explanation of its decision.

> Monica indicated as early as the summer of 2016 that she was making improvements to the property and readying it for sale. At the hearing on October 2, 2017, the court heard testimony that this work had still not been completed. We found credible the testimony that the house still has some value as a rental unit and credited the testimony of Patricia Chwatek of Howard Hanna Real Estate as to this value. The court does not understand how it could countenance allowing Monica to live in the property rent free while the estate is insolvent and the largest debt of the estate is a claim by Monica. The Opalkas are required to protect the interests of the other heirs, Mark and Michelle. Without payment of rent to the estate, Monica benefits while the other heirs do not.

Orphans' Court Opinion, 1/8/18, at 4-5 (unnecessary capitalization omitted).

Monica posits that the orphans' court's decision is improper in light of this Court's decision in In re Padezanin, 937 A.2d 475 (Pa.Super. 2007). The appellant in that case, like Monica, was ordered to pay rent for living in a property which she had occupied at the time of the decedent's death with the

decedent's consent. Id. at 482. This Court reversed, citing a comment to 20 Pa.C.S. § 3311 which provides: "It is not contemplated that rents shall be collected by the personal representative from real estate occupied by an heir or devisee unless needed for payment of claims." Id. (emphasis omitted). This Court interpreted the statute to indicate that "as long as the estate is solvent, rental is not awarded to an estate from an heir or devisee occupying land of the decedent when the decedent died." Id.

Monica argues that because the evidence showed that Penelope's estate was solvent, and that she was living at the property at the time of Penelope's death with Penelope's consent, the Padezanin ruling prohibits requiring Monica to pay rent. Monica's brief at 11.

No party disputes that Monica resided at the property when Penelope died, and that she was there with Penelope's consent. Further, although Monica herself described the estate as "bankrupt," N.T. Exclusive Possession Hearing, 10/2/17, at 56, the estate is solvent. In its present condition, the property has a market value of approximately $200,000. Id. at 10. The estate further includes furnishings and personal property estimated to be worth $50,000.[3] Id. at 28. Ms. Opalka testified that the total debts of the

_____

[3] This estimate is based on Ms. Opalka's visits to the property during Penelope's lifetime. N.T. Exclusive Possession Hearing, 10/2/17, at 28. As discussed, based upon Monica's refusal to cooperate, Ms. Opalka has not had access to the property to discern the present status of Penelope's personal property.

estate amount to $30,900. Id. at 19. As such, the assets of the estate are greater than its debts.

However, we find this Court's later decision in In re Estate of Bouks, 964 A.2d 4, 5 (Pa.Super. 2008), to be more apt to the circumstances of the instant case than those of Padezanin. In Bouks, the issue before this Court was "whether an estate beneficiary who is residing with the decedent at the time of death may continue to live on the estate's real property [for] four years without paying rent when that beneficiary is responsible for the delay in the disposition of the real estate." Id. at 5. The appellant was one of two beneficiaries of his mother's estate, and indicated that he wished to purchase the home in which he had resided with his mother. Id. After two years of living in the residence rent-free, he filed a petition seeking to purchase the home at a fraction of its appraised value. Id. The orphans' court denied the request and ordered the appellant to file an account and to place the property for sale. Id. When the appellant did not comply, his sister filed a petition for contempt, prompting the appellant to finally purchase the home for 250% the amount he originally offered and to file the account. Id. The sister filed objections to the account contending that the appellant should have to pay rent and the orphans' court agreed, requiring the appellant to pay rent for the time he lived in the property except for the six months immediately following his mother's death. Id.

On appeal, the appellant relied upon Padezanin in claiming that because he lived with his mother in the property with her permission at the time of her death and the estate was solvent, he could not be required to pay rent. This Court disagreed, explaining as follows.

> Padezanin is distinguishable. In that case, we vacated an award of rental in favor of an estate and against an heir who was residing on real estate owned by the decedent with decedent's permission when he died. However, the heir had vacated the real estate shortly after the estate was opened and rental had been awarded for a matter of a few months. As noted, the heir left the real estate in a timely manner and did not engage in conduct preventing the real estate from being properly administered. Nothing in that decision should be construed so as to permit the beneficiary of an estate to reside on the estate's real property rent-free for an unlimited period of time.
>
> In the present case, [the a]ppellant was directly responsible for the delay in his purchase of the estate's real property. He attempted to purchase the residence for $70,000 when the appraisals indicated that it was worth between $110,000 and $140,000. [The a]ppellant then defied a directive from the orphans' court that he list the property for sale. It was only when [the a]ppellant was faced with a contempt petition that the sale was finally consummated. Since [the a]ppellant's dilatory behavior prevented the co-beneficiary of this estate from receiving her one-half interest in the real estate for four years, the orphans' court properly awarded rental.

Id. at 6-7.

As discussed above, Monica has been living rent-free in the primary asset of the estate since December 2015, to the detriment of the other heirs. Monica has made it impossible for the Opalkas to liquidate the estate's assets to pay outstanding debts. Monica represented to the orphans' court in June 2016, when she had already been living in the property for six months after

Penelope's death, that she wished to remain in the property to use some "elbow grease and some tender loving care" to maximize the sale value of the house and recoup more than the money she would put into fixing it up. N.T. Rule to Show Cause, 6/20/16, at 18. Yet, at the time that the orphans' court issued the appealed-from order in October 2017, Monica had taken little if any steps toward readying the property for sale. Further, she expressed her intention to stay in the property without paying rent until she was forced to leave. Under Bouks, the orphans' court did not err in awarding rental for the time period in which Monica's dilatory conduct deprived Mark and Michelle from their interests in the property.[4]

Monica's remaining claim is that the orphans' court erred in awarding the estate attorney fees in connection with the litigation of the petition for exclusive possession of the property. She argues that the record lacks evidence to support a finding that she engaged in conduct that warranted the award of fees. Monica's brief at 12-13.

In considering Monica's issue, we bear in mind that "appellate review of an order of a tribunal awarding counsel fees to a litigant is limited solely to determining whether the tribunal palpably abused its discretion in making the fee award." Lucchino v. Commonwealth, 809 A.2d 264, 268-69 (Pa. 2002).

_____

[4] We note that, similar to the orphans' court in Bouks, the court did not order Monica to pay rent for the entirety of her stay in the property. Rather, it exempted the first year following Penelope's death from Monica's back-rent obligation.

While the general rule is that each party to litigation is responsible for its attorney fees, our legislature has enumerated circumstances in which a participant may be entitled to the payment of attorney fees, including a "participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter." 42 Pa.C.S. § 2503(7). The orphans' court detailed its reasons for awarding the estate counsel fees based upon this statute as follows:

> It has been conceded by Monica at various points in the litigation surrounding both Donald's estate and Penelope's estate that the property must be sold. However, it has become apparent to the court that Monica had the intention to use the leverage she possessed as the occupier of the real estate to maximize the terms and time of the sale for her sole benefit.
>
> . . . .
>
> We believe the record supports the award of counsel fees based on Monica's conduct throughout the litigation. We shall rely on her inconsistent contentions and dilatory behavior in allowing the Opalkas to fulfill their duties as executors to support the award of attorney's fees to Penelope's estate.

Orphans' Court Opinion, 1/8/18, at 5-6 (unnecessary capitalization omitted).

Contrary to Monica's arguments, we find the orphans' court's determination supported by the record. As is iterated in detail above, the record extending back to litigation in Donald's estate has demonstrated that Monica has made representations about facilitating the sale of the property that she failed to commence, let alone complete. Monica expressed the intent to remain in the home indefinitely, and has not cooperated with the Opalkas, whom Penelope chose to administer her estate, to allow them to do their job

of distributing the estate to all of Penelope's heirs. As the estate expended resources in the nature of attorney fees as a direct result of Monica's dilatory conduct, the orphans' court did not abuse its discretion in requiring Monica to reimburse the estate. Accord Padezanin, supra at 484 (affirming award of attorney fees incurred because litigants refused to comply with obligation until a petition for contempt was drafted and served).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/27/2018